Filed June 14, 1887.

---

No. 12,844.

The Pennsylvania Company *v.* Whitcomb, Administrator.

MASTER AND SERVANT.—*Duty of Employer to Provide Safe Machinery.*—It is the duty of the employer to provide the employee with a safe working place and with safe machinery and appliances, and in discharging this duty he is required to exercise ordinary care and skill.

SAME.—*Delegation of Duty.—Responsibility of Master.*—The duty to provide employees with safe machinery and appliances can not be so delegated by the master as to relieve him from responsibility. The agent to

whom it is entrusted, whatever his rank may be, acts as the master in discharging it.

SAME.—*Rules Governing Employees.*—*Contract of Service.*—An employer may adopt reasonable rules for the government of his employees, and when brought to the knowledge of the latter, who thereafter continue in the master's service, the rules and an implied undertaking to obey them enter into the contract of service.

SAME.—*Railroad.*—*Rule that Brakemen Shall Use Coupling-Sticks.*— *Violation of Requirement.*—*Liability of Company.*—Where a rule of a railroad company requires that cars shall be coupled by the use of coupling-sticks, and this rule is brought to the knowledge of one employed as brakeman, and assented to by him, it constitutes a part of his contract of service, and for an injury received by him in endeavoring to make a coupling by hand, the company is not liable, unless it be shown that the act could not have been safely performed even by the use of the appliance provided, or that obedience to the rule was not practicable under the circumstances of the particular case.

From the Shelby Circuit Court.

*S. Stansifer*, for appellant.

*T. B. Adams, L. T. Michener* and *G. M. Wright,* for appellee.

ELLIOTT, J.—Millard Spurlin was in the service of the appellant as a brakeman, and was killed while engaged in the line of his duty, in coupling cars.

The complaint of the appellee, who sues as the administrator of Spurlin, alleges, among other things, that, "The defendant carelessly, negligently and contrary to its duty, had in its use and control on said railway at Lewis Creek Station, Shelby county, Indiana, two freight cars which were unsafe and unsuitable in their construction in the manner following, to wit: That through the heavy beam across one of said cars there projected a large iron rod for the distance of, to wit, four inches beyond said beam and about, to wit, two feet from the draw-bar on said beam, and that on the other of said cars there projected a large cast-iron stirrup or post socket for the distance of, to wit, six inches from the heavy beam across the end of said car, the stirrup or socket being bolted to said beam about, to wit, two feet from the draw-bar thereon ; and that said cars were so unsafely and insecurely constructed

that when they were being coupled together the said iron bolt and said iron stirrup or socket were almost opposite each other and with no more of space between them than, to wit, three inches. And the plaintiff says that in order to couple said cars together it was necessary for the brakeman performing said duty to go between said car in which was said iron bolt and the other car, and insert the link and bolt at their proper places in the draw-bars, he necessarily standing at the time at such distance from the dead-woods aforesaid as to be between said bolt and said stirrup or socket on the other car. And the plaintiff says that, on the day and at said station, while the freight train on which the said decedent was employed was engaged in switching and moving and shifting freight cars, the said decedent, in the performance of his duty, went between the two cars above described, to couple them together, one of said cars standing still, while the other was being pushed along the track by the engine toward the first named car, the decedent necessarily standing at the time at such a distance from the dead-woods aforesaid as to be between said bolt and the said stirrup or socket on the other car; that while so standing there, engaged in coupling said cars together, the said cars were pushed together by said engine, and the decedent was caught between said bolt and said stirrup or socket, and his body was so crushed, pressed and injured thereby that he died in said county in fifteen minutes thereafter as the result of said injuries occasioned as aforesaid; and that if said cars had been safely, suitably and properly constructed, said injuries and death would not have occurred. The plaintiff also says that said injuries were received without any fault or negligence on the part of said decedent."

The appellant answered in several paragraphs, but we regard the controlling question the same upon all of these paragraphs, for the sufficiency of all of them depends upon what is alleged to be a contract entered into between the appellant and the appellee's intestate. That contract is averred

to be evidenced by a circular issued by the appellant and assented to by the intestate. Omitting immaterial and formal parts, the circular and the alleged agreement of the decedent read as follows:

"Coupling cars by hand is dangerous and unnecessary. This work can be as effectually done by the use of a coupling-stick, which will be supplied to employees by yard-masters at Louisville, Jeffersonville, Columbus, Madison and Indianapolis. From this date the company will not assume any liability or pay any expenses incurred by employees on account of injuries received in coupling cars.

"E. W. McKENNA, Superintendent.

"I hereby acknowledge the receipt of a copy of the above circular. M. SPURLIN."

It is averred in the answer that during all the time that Spurlin was in the appellant's service a full supply of coupling-sticks was kept with the yard-masters at Louisville, Jeffersonville, Columbus, Madison and Indianapolis, "and that the said Millard Spurlin, although he might and could readily have supplied himself with one of the said coupling-sticks, at any one of said places or from the caboose of said train, where there was a supply, and of which he had knowledge, failed to do so, and attempted to and made said coupling, whereby he was injured as complained of, by hand. It is denied that decedent was in any manner obligated, or that it was his duty, to make said coupling other than by the use of a coupling-stick, and it is averred that had he used one of said coupling-sticks, it would not have been necessary for him to go or stand between said bolt and said stirrup or socket."

It is undoubtedly the duty of the employer to provide the employee with a safe working place and with safe machinery and appliances. The employer is not bound to exercise the highest degree of skill and care in discharging this duty, but he is required to exercise ordinary care and skill. *Krueger* v. *Louisville, etc., R. W. Co., ante,* p. 51; *Bradbury* v. *Good-*

*win*, 108 Ind. 286; *Pittsburgh, etc., R. W. Co.* v. *Adams*, 105 Ind. 151; *Baltimore, etc., R. R. Co.,* v. *Rowan*, 104 Ind. 88; *Indiana Car Co.* v. *Parker*, 100 Ind. 181, and cases cited.

This duty is one which the law enjoins upon the master, and it is one which can not be so delegated as to relieve him from responsibility. The agent to whom it is entrusted, whatever his rank may be, acts as the master in discharging it. He is in the master's place. *Krueger* v. *Louisville, etc., R. W. Co., supra,* and cases cited; *Indiana Car Co.* v. *Parker, supra,* and cases cited; *Northern Pacific R. R. Co.* v. *Herbert,* 116 U. S. 642 (33 Alb. L. J. 288).

In the case last cited the authorities are reviewed, and the court said: "This duty he can not delegate to a servant so as to exempt himself from liability for injuries caused to another servant by its omission. Indeed, no duty required of him for the safety and protection of his servants can be transferred so as to exonerate him from such liability."

These principles, so confidently relied upon by the appellee, by no means solve the questions presented by these answers. Duties rest upon the employee as well as upon the employer. Obligations are imposed upon the one by law as well as upon the other. One of the obligations imposed upon one who enters another's employment is, that he shall assume the risks and dangers incident to that employment which are known to him, or which by the exercise of reasonable care he might have known. No one is bound to remain in a service which he is informed is dangerous, and if an employee does voluntarily continue in the master's service after notice of its dangers he assumes all risks arising from the known dangers. *Umback* v. *Lake Shore, etc., R. W. Co.,* 83 Ind. 191; *Louisville, etc., R..R. Co.* v. *Orr,* 84 Ind. 50; *Bradbury* v. *Goodwin, supra; Lake Shore, etc., R. W. Co.* v. *Stupak*, 108 Ind. 1; *Indiana, etc., R. W. Co.* v. *Dailey*, 110 Ind. 75; *Hatt* v. *Nay*, 10 N. E. Rep. 807.

The risks which the employee assumes are, however, such as are incident to his service, and such as arise in cases where

ordinarily safe machinery and appliances are provided. If machinery of an unusual and more dangerous character is provided, and the employee has no notice of the danger, then he does not assume the risk attendant upon its use. *Baltimore, etc., R. R. Co.* v. *Rowan, supra.*

If the deceased continued in the master's service after the danger of coupling cars was made known to him as incidental to his service, he voluntarily assumed the risk, and it is very doubtful whether the complaint is good. This we say because it does not aver that the cars were not ordinary ones and the danger from coupling them an unusual one. But as no assault is made upon the complaint, we do not pass upon its sufficiency. It is necessary, however, to speak of the character of the complaint, for the question is, whether the answer is good to the complaint as drawn, and not whether it would be good in any case. It is difficult, we may further add, to perceive how this action can be maintained without showing that the danger was not incident to the service, or the cars of an unusual kind, but on this phase of the subject we express no direct opinion.

The circular warns the employees that the coupling of all cars by hand is dangerous. Its warning is not confined to cars of a particular class, but it extends to all kinds and all classes. Nor is it simply a warning notice. It is much more. It is a warning and a direction. It instructs all employees to couple all cars with a coupling-stick, and forbids the coupling by hand. This is its legal meaning and effect. By clear and necessary implication, it forbids the coupling of cars by hand and commands that it be always done by the instruments provided for that purpose. We very much doubt whether an employee who remains in service after such a warning, and who disobeys the instructions received from his employer, can recover without, at least, affirmatively showing that obedience would have caused greater danger than disobedience, or that obedience was not practicable under the circumstances of the particular case.

*Buzzell* v. *Laconia Man'f'g Co.*, 48 Maine, 113; *Frazier* v. *Pennsylvania R. R. Co.*, 38 Pa. St. 104; *Mad River, etc., R. R. Co.* v. *Barber*, 5 Ohio St. 541; *Senior* v. *Ward*, 1 El. & El. 385.

It is difficult to conceive any principle upon which an employer can be held liable to an employee who disobeys instructions without cause or excuse. Analogous cases seem to declare against the right of recovery; for, to mention one of many, even a passenger who violates, without excuse, the rules of a carrier, can not maintain an action. We are strongly inclined to the opinion that where there is a disobedience of instructions there can be no recovery by the employee, unless he shows that obedience would have augmented the danger, or that it would have been impracticable. But we need not decide this question, for the answers carry us beyond it. While it is not necessary to decide the questions we have just adverted to, it is, nevertheless, proper to speak of them, since what we have said is logically connected with what follows upon the ruling question in the case.

We regard the circular and the acts performed under it as constituting a contract. By formally acknowledging the receipt of the circular and continuing in the service of the company, the decedent made its terms part of the contract with his employer. It was in the nature of a statement to him of the terms upon which the company would continue him in its service. It asserts, if not in express terms, by clear implication that cars must not be coupled by hand, that they must be coupled by the use of the appliances provided, and that if they are coupled by hand the company will not be liable for injuries received by its employees. These are the terms of the contract of hiring. There are many cases in the books holding that the rules adopted by the employer and made known to the employee enter into and form part of the contract. *Payne* v. *Western, etc., R. R. Co.*, 13 Lea (Tenn.) 507 (49 Am. R. 666); *Carew* v. *Rutherford*, 106 Mass. 1 (8 Am. R. 287); *Heywood* v. *Tillson*, 75 Maine, 225

(46 Am. R. 373); *Collins* v. *New England Iron Co.,* 115 Mass. 23; *Bradley* v. *Salmon Falls, etc., Co.,* 30 N. H. 487.

It is, indeed, not simply the right of the employer to adopt proper rules. but it is his duty to do so. *Abel* v. *President, etc.,* 103 N. Y. 581 (57 Am. R. 773); *Vose* v. *Lancashire, etc., R. W. Co.,* 2 H. & N. 728; *Haynes* v. *East Tennessee, etc., R. R.,* 3 Cold. 222.

Even in the case of a passenger, the rule is that the regulations of the carrier enter, to some extent at least, into the contract of the parties. *Chicago, etc., R. R. Co.* v. *Bills,* 104 Ind. 13; *Western Union Tel. Co.* v. *Harding,* 103 Ind. 505, 511; *Ohio, etc., R. W. Co.* v. *Applewhite,* 52 Ind. 540; *Pittsburgh, etc., R. W. Co.* v. *Nuzum,* 50 Ind. 141 (19 Am. R. 703).

It is obvious that a business requiring the employment of many persons could not be properly conducted without a system of rules, and it is equally clear that the rules would be of little force unless they formed a part of the contract between the employer and employee. If they did not constitute an element of the contract, they would protect neither the master nor the servant, and unless the master may prescribe rules and exact obedience to them, he can not control his own business. It seems quite clear on principle that the employer may adopt reasonable rules, and that when brought to the knowledge of the employee they constitute an element of the contract. The decided cases recognize this general rule, although there seems to be some difference in the course pursued in giving it practical effect. *Ford* v. *Fitchburg R. R. Co.,* 110 Mass. 240; *Sprong* v. *Boston, etc., R. R. Co.,* 58 N. Y. 56; *Memphis, etc., R. R. Co.* v. *Thomas,* 51 Miss. 637; *Louisville, etc., R. W. Co.* v. *Frawley,* 110 Ind. 18.

Where a person enters the service of another, knowing the rules prescribed by his employer, he impliedly undertakes to obey those rules, and this undertaking enters into his contract. An undertaking implied by law is as much a part of the contract as its express stipulations. *Long* v.

*Straus*, 107 Ind. 94.    It needs but little argument to prove that one who enters a service governed by rules which are known to him, contracts to perform service under those rules. It is evident that this must be so, or else the cases which hold that it is a breach of duty on the part of the master not to make rules, as well as those which hold that it is a breach of duty for the employee to violate them, are not well decided, and that they are not correctly decided can not be granted; so that the conclusion must be, that the rules form an element of the contract of service. If regulations are not part of the contract, then they create no duty on the part of the master and impose no obligations on the employee. If there is no duty there is no liability, and yet, as we have seen, the cases all agree that there is a liability where there is a breach of known rules.

It can not be possible that a servant may discharge his duties as he sees fit regardless of the rules prescribed by the master. To affirm that he can would be to strip the master of all authority over his own business, and leave him powerless to instruct or command. If the master has authority, and gives it expression in rules duly made known to his employees, they, by accepting service, agree, as part of their contract, that they will obey those rules. If this be not so, then there can be no systematic government of the master's business, nor any definite rule for determining the rights and duties of the parties where the relation of master and servant exists.

There is some conflict in the authorities upon the question whether a contract exonerating the employer from liability for negligence is valid. *Roesner* v. *Hermann*, 8 Fed. Rep. 782; *Western, etc., R. R. Co.* v. *Bishop*, 50 Ga. 465. But we do not enter this field of conflict. It is not necessary for us to do so, because we need go no further than determine that a master may lawfully contract that his employees shall use certain designated appliances in performing the duties of their services. Our decision is, that the contract before us

is a valid one so far as it affects the case made by the complaint, for we regard it as an undertaking that the employees shall use a designated appliance. It is not, so far as concerns the question now before us, a contract that the employer will in no event be liable, but it is an agreement that the employer will not be liable unless the appliances provided by him are used as he directs.

The contract applies to the coupling of all cars, and the employee agrees to use the coupling-stick in all cases. The employer had the right, therefore, to assume that the employee would not undertake to couple cars, no matter what their kind or class, without making use of the coupling-stick. If a coupling could have been safely made with the coupling-stick, then there is no liability, whatever may have been the kind of cars the employee was required to connect. The employer was not bound to do more than provide such cars as might have been safely connected by the use of the appliance which the employee was directed to use. There can be no liability, at least, until it is made to appear that had the coupling-stick been used, still the duty of coupling could not have been safely performed, or that, under the circumstances, it was not practicable to use the appliance selected by the employer.

The presumption is, that the master has performed his duty. *Hard* v. *Vermont, etc., R. R. Co.*, 32 Vt. 473; Wood Master and Servant, 708; 3 Wood Railway Law, 1468. This presumption the employee must overcome, for it stands, until overthrown, as a *prima facie* case. *Nave* v. *Flack*, 90 Ind. 205 (46 Am. R. 205). It must, therefore, be held that the appellant discharged its duty unless the contrary has been affirmatively shown, and this leads to the conclusion that the presumption is, in the absence of countervailing facts, that the appellant did provide such cars as might have been safely coupled by the use of the coupling-stick. It was incumbent on the appellee to overthrow this presumption, for until overthrown it stands in his way to a recovery.

· Where the contract requires that the employee shall use appliances designated by the master, and he fails· to do so, the master can not be deemed in fault unless something more is made to appear. Nor can the master be deemed in fault for providing cars that can not be safely coupled by hand when he has required his employees not to couple by hand in any case, but to use the coupling-stick in every case. Where, as here, the agreement is that the employee will couple cars in a designated manner, the master is bound to use reasonable care to provide cars that may be safely coupled in that manner, but is not bound to furnish cars that can be safely coupled in the manner forbidden by the contract of service.

The utmost that can be conceded to the complaint in this case, if, indeed, so much can be conceded, is, that it shows an actionable breach of duty in failing to provide cars that could be coupled by hand without injury to the brakeman. The complaint, conceding its sufficiency, is sufficient only because it shows a negligent breach of duty in failing to furnish cars that might be safely coupled by hand. The theory of the complaint is, that it was proper to couple by hand; that the appellant did not provide such cars as could· be safely coupled in that manner, therefore, it is liable. The complaint makes a *prima facie* case, if it makes one at all, only upon the hypothesis that it was the appellant's duty to provide cars that might with safety be coupled by hand, and if this hypothesis is destroyed the *prima facie* case fails. The answer does destroy this *prima facie* case, because it shows that it was a breach of duty by the employee to undertake to couple the cars by hand, and because it shows that the obligation resting on the appellant was that of providing cars which might safely be coupled by the use of the coupling-stick. The duty of the master under the contract of service was to provide cars that might be coupled without danger by the use of a coupling-stick, and not to provide cars that might safely be coupled by hand. If this was

the appellant's duty, then it is manifest that, to constitute a cause of action, there must be facts showing a breach of this duty.

We regard the answer as presenting, at least, a *prima facie* defence, and this is sufficient to drive the appellee to a reply.

Judgment reversed.

