STEWART, RESPONDENT, *v.* PITTSBURG AND MONTANA COPPER CO. ET AL., APPELLANTS.

(No. 2,883.)

(Submitted September 29, 1910.   Decided November 5, 1910.)

[111 Pac. 723.]

*Personal Injuries—Master and Servant—Assumption of Risk—Appreciation of Danger — Negligence — Instructions — Contributory Negligence—Special Defense—Pleading—Excessive Verdict.*

Personal Injuries—Master and Servant—Assumption of Risk—Appreciation of Danger—Evidence.
   1.   In a personal injury action· by a smelter employee against his employer, it was not reversible error to permit plaintiff to testify that he did not appreciate the danger into which obedience to an order of a shift-boss would place him.

Same—"Appreciation of Danger"—Definition.
   2.   By the term "appreciation of danger," as applied to the law of master and servant in personal injury actions, is meant the state of mind of the servant when he acted, *i. e.*, that he formed a judgment as to the future and that his judgment was right.

Same—Assumption of Risk—Evidence.

　　3.　In order to successfully charge plaintiff with assumption of risk, defendant employer must show not only that the former knew of the danger incident to his employment, but also that he appreciated, or as a reasonably prudent person should have appreciated, it.

Same—Evidence—Admissibility.

　　4.　Testimony of plaintiff tending to describe his surroundings at the time of the accident was properly admitted, though, in doing so, he detailed the difficulties he encountered in extricating himself from his perilous situation *after* his injury, on account of not finding a board on the trestle on which he was engaged at the time, which had been at that place theretofore.

Same—Evidence—Admissibility—Harmless Error.·

　　5.　The admission in evidence of a conversation between plaintiff and defendant's superintendent, had long after the accident, while the former was in the employ of defendant, in the course of which the plaintiff asked the superintendent if "he could do anything for me—for my foot" (which was burned), to which the latter replied in the negative, was nonprejudicial error. It was immaterial and of no consequence to either party.

Same—Negligence—Instructions.

　　6.　An offered instruction in a personal injury action which ignored the question of plaintiff's negligence having been a proximate or contributing cause of his injury, but made his bare negligence determinative of his right to recover, was properly refused.

Same—Contributory Negligence—Special Defense—Pleadings.

　　7.　The defense of contributory negligence is a special one, and must be pleaded and proved by the defendant.

Same—Excessive Verdict.

　　8.　A verdict for $5,000 in favor of plaintiff, a smelter employee, whose foot was burned, which injury, however, as testified by his physician, was permanently healed in about eight weeks after the accident, *held* excessive and reduced to $3,000.

*Appeal from District Court, Silver Bow County; Jeremiah J. Lynch, Judge.*

Action by Thomas M. Stewart against the Pittsburg and Montana Copper Company and another. Judgment for plaintiff, and defendants appeal from it and an order refusing a new trial. Affirmed on condition.

*Messrs. Kremer, Sanders & Kremer* submitted a brief in behalf of Appellants. *Mr. A. Kremer* argued the cause orally.

Error was committed in permitting plaintiff to answer the question whether he realized the danger of the place into which he was ordered by the shift boss. The question is whether a man of his experience, under similar circumstances, and with due regard for his own safety, should have realized the

danger, and this was what the jury, among other vital questions, was impaneled to determine, not from any conclusions of the plaintiff himself, but from the facts as detailed by the witnesses. That such character of questions cannot be asked, see: *City of Springfield* v. *Coe*, 166 Ill. 22, 46 N. E. 709; *Ebert* v. *Gulf etc. Ry. Co.* (Tex. Civ. App.), 49 S. W. 1105; *Detroit S. R. Co.* v. *Lambert*, 150 Fed. 555, 80 C. C. A. 357; *Phifer* v. *C. C. R. Co.*, 122 N. C. 940, 29 S. E. 578; *Savannah etc.* v. *Evans*, 121 Ga. 391, 49 S. E. 308; *City* v. *Iney*, 151 Ala. 392, 44 South. 48; *Miles* v. *Stanke*, 114 Wis. 94, 89 N. W. 833; *Huachuca Water Co.* v. *Swain*, 4 Ariz. 113, 77 Pac. 619; *Insley* v. *Shire*, 54 Kan. 793, 45 Am. St. Rep. 308, 39 Pac. 713; *Langhammer* v. *City of Manchester*, 99 Iowa, 295, 68 N. W. 688; *Texas S. R. Co.* v. *Long*, 35 Tex. Civ. App. 339, 80 S. W. 114. The identical question has been held error under pleadings similar to those in the case at bar, in the case of *Sterling Bridge Co.* v. *Pearl*, 80 Ill. 251.

Plaintiff was allowed to prove knowledge as to the manner of the happening of the accident as against the appellant company, through the statements of its superintendent Rohan, made four or five months after the accident. These statements, made by defendant company's agent, as to past events, were inadmissible as hearsay. (See *Kamp* v. *Coxe Bros. & Co.*, 122 Wis. 206, 99 N. W. 366; *Baier* v. *Selke*, 211 Ill. 512, 103 Am. St. Rep. 208, 71 N. E. 1074; *Alquist* v. *Eagle Iron Co.*, 120 Iowa, 67, 101 N. W. 520; *Walker* v. *O'Connell*, 59 Kan. 306, 52 Pac. 894; *McFarland's Admr.* v. *Harbison & Walker Co.* (Ky.), 82 S. W. 430; *Rice* v. *City of St. Louis*, 165 Mo. 636, 65 S. W. 1002; *Miller & Co.* v. *McKenzie*, 126 Ga. 746, 55 S. E. 952; *Sims* v. *Forbes*, 86 Miss. 412, 38 South. 546.) "Admissions and declarations of an agent after the fact, not part of the *res gestae*, are not admissible." (*Whalen* v. *Standard Gas Light Co.*, 10 N. Y. Supp. 105; *White* v. *Lewiston & Y. F. Ry. Co.*, 94 App. Div. 4, 87 N. Y. Supp. 901; *Burke* v. *Borden Con. Milk Co.*, 98 App. Div. 219, 90 N. Y. Supp. 527; *Luman* v. *Golden Ancient Channel Min. Co.*, 140 Cal. 700, 74 Pac. 308.)

The damages awarded are excessive. The evidence clearly shows that the injuries complained of are not of a permanent nature. (See *The Iroquois*, 113 Fed. 964; *Davenport* v. *City of Hannibal*, 108 Mo. 471, 18 S. W. 1122; *Galveston etc.* v. *Pitts* (Tex. Civ. App.), 42 S. W. 255; *Ocean S. S. Co.* v. *Matthews*, 86 Ga. 418, 12 S. E. 632; *Chicago City Ry. Co.* v. *Mumford*, 97 Ill. 560; *Garlick* v. *City of Pella*, 53 Iowa, 646, 6 N. W. 3; *C. N. O. & T. P. R. Co.* v. *Pemberton*, 9 Ky. Law Rep. 859; *Haniford* v. *City of Kansas City*, 103 Mo. 172, 15 S. W. 753; *City of Fort Worth* v. *Johnson*, 84 Tex. 137, 19 S. W. 361.)

No appearance on the part of Respondent.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

In May, 1908, the defendant Pittsburg & Montana Copper Company was operating the Pittsmont smelter, at Butte. Defendant Zachman was employed by the company as a shift-boss, and the plaintiff was employed as a common laborer. In the operation of the smelter it was necessary to remove the slag or refuse from the furnaces and deposit it on a dump near the smelter. The slag was taken out in large pots, placed on a truck, and the truck ordinarily propelled by electricity by means of an overhead trolley. When the truck carrying one of these pots of slag reached the place where the slag was to be deposited, the pot was tilted by means of a crane and the molten mass permitted to flow out; but, on account of the fact that these pots frequently stood for some time after being removed from the furnace and before being emptied, the slag would cool, and a crust would form over the top of the pot and on its edges, so that before the pot could be emptied, it was necessary to take a sledge and break holes in the top crust to empty the molten mass and then take pinch bars and pry out the remaining portions of the crust. On May 30, 1908, the electric power for operating the truck was discontinued on account of a storm, and, when plaintiff went to work at 11 P. M. of that day, the truck

had to be run out by hand, and plaintiff was engaged in helping to move it. At about 1:30 A. M. of May 31st a pot was removed from the furnace, hauled by the men some distance from the smelter, as far as the men engaged in moving it were able to haul it, and when that point was reached the shift-boss ordered the pot to be emptied. The place where the truck was stopped was just at the farther end of a short trestle. The men engaged in emptying the pot endeavored to break the crust which had formed over the top of the slag, but were unable to do so, and the pot was then craned over to a horizontal position on the truck, and one of the men, Walter Smith, undertook to pry out the entire contents of the pot with a pinch bar. At this stage of the proceedings, the plaintiff tells the story of his injury and its cause as follows: "Mr. Zachman says to me, 'Tom, get a bar and get in on the other side and see if you can't help your partner.' I took a bar and got over there and started to pick, and Mr. Zachman says for me to come out, he was going to come in and relieve me for a minute; and just then the slag shell on top busted on that side and shot out on that side, and I got it when it shot. I turned to jump and started to jump, and I happened to see that trestle; it was open." Over objection of counsel for defendants, plaintiff was asked if he realized the danger into which he was going when he obeyed the order of Zachman, and he replied that he did not. He was asked to describe the place where he was injured and its surroundings, which he did. A motion was then made by counsel for defendants to strike out a portion of this answer, but the motion was denied. When the crust broke and the molten slag poured out, a portion of it ran over plaintiff's right foot and ankle, severely burning them. He was confined in the hospital for about six weeks, and received treatment for two weeks after he was discharged from the hospital. He was unable to work for about two months after receiving the injury, but at the expiration of that period he returned to work for the defendant company at a different character of work and at a wage fifty cents per day less than he was receiving at the time of his injury. He worked

at this new employment for a month and a half, and then laid off to attend a family reunion.  He returned to his work, but soon after he was taken sick and was idle for a considerable time. When he again returned for work, he was told that there was not anything for him to do.  However, he testified that he did work for the defendant company after that.  He says: "I cannot remember whether I was working there at the time I brought this suit, but I think I was not.  * * *  Mr. Rohan might have told me nothing was doing the day after I brought this suit, and after he gave me the watching.  I went up to the smelter to see him and have a talk with him."  This conversation with Rohan, the superintendent of the smelter, which occurred several months after the accident, was admitted over objection of counsel for defendants, and, omitting the profanity, is stated by the plaintiff as follows: "Well, I walked up to Mr. Rohan and asked him if he could do anything for me, for my foot, and he said: 'Well, * * * Stewart, no.  I knew * * * well you were going to get burned.' "  Again the witness testified: "I think I was working there at the time I had this conversation with Mr. Rohan."  In his complaint the plaintiff claims that he was permanently disabled and incapacitated for work.  On the trial he testified as to the extent of his injury, and exhibited his scarred foot to the jury.  He testified that the burn caused him great pain, that even at the time of the trial he was forced to limp, and that if he stood for any considerable time his right foot pained him.

Upon the trial the defendants requested the court to give instruction 13a, but the request was refused.  The offered instruction follows: "You are instructed that it was the duty of the plaintiff to exercise reasonable care to avoid injuries to himself, that he was under as great an obligation to provide for his own safety from such dangers as were known to him or were capable of being known to him by the exercise of ordinary care on his part as the defendants were to provide for him.  The plaintiff must have taken ordinary care to learn the dangers which were liable to beset him in his services at the time of the injuries com-

plained of; he could not go blindly about his work where there was danger. It was his duty to inform himself by exercising his faculties and making such examination of the surroundings as reasonably careful and prudent men under like circumstances would make; and, if from the evidence in this case you believe that plaintiff did not exercise such care for his own safety as an ordinarily prudent man under like circumstances would have exercised, then you are instructed that he cannot recover."

The jury returned a verdict in favor of plaintiff for $5,000, and judgment was rendered and entered in accordance therewith. From the judgment and an order denying them a new trial, the defendants have appealed. There are numerous assignments of error, but the facts set forth above present the five principal questions for determination.

1. Did the court commit reversible error in permitting the plaintiff to state that he did not appreciate the danger into which he was ordered by Zachman, the shift-boss? Contention is made that the witness was thus called upon to determine for himself the very question which it was the duty of the jury to decide; but with this we cannot agree. The question for determination at the trial was not whether plaintiff appreciated the danger, but whether, as a reasonably prudent person, under the circumstances, he ought to have appreciated it. The standard in all such cases is that of a reasonably prudent person similarly situated. The plaintiff might say that he did not appreciate the danger, and yet his answer would not avail him if the jury concluded from all the facts and circumstances that, as a reasonably prudent person, he ought to have appreciated it; and the fact that plaintiff prevailed indicates that his lack of appreciation of the danger was deemed by the jury no greater than that of the average prudent person similarly situated. All the facts and circumstances were before the jury: A description of the place, the character of the work, the abnormal condition prevailing with respect to this particular slag pot, and the experience or inexperience of the plaintiff.

We think the evidence was properly admitted.   The manifest purpose of the question was to negative the idea that the plaintiff assumed the risk when he went into the place and attempted to pry out the contents of the slag pot.   We have repeatedly said that it is not sufficient that plaintiff knows of the risk; he must appreciate the danger as well.   (*O'Brien* v. *Corra Rock-Island Min. Co.*, 40 Mont. 212, 105 Pac. 724; *Hollingsworth* v. *Davis-Daly Estates Copper Co.*, 38 Mont. 143, 99 Pac. 142; *Stephens* v. *Elliott*, 36 Mont. 92, 92 Pac. 45.)

What, then, is meant by saying that plaintiff appreciates the danger?   In *McKee* v. *Tourtellotte*, 167 Mass. 69, 44 N. E. 1071, 48 L. R. A. 542, the court said: "When we say that a man appreciates a danger, we mean that he forms a judgment as to the future, and that his judgment is right."   If this be correct, and we think it is, how, then, may the jury know whether the plaintiff appreciated the danger or formed a judgment with respect to it, except by the answer he gives to the direct question asked him?   As said before, his answer is not controlling upon the jury.   It indicates his state of mind at the time he acted; but it is still for the jury to say whether, as a reasonably prudent person, he ought to have reached a conclusion that the place into which he was ordered was dangerous, when considered in the light of the surrounding circumstances.

2. During the course of plaintiff's examination, he was asked: "Describe the place minutely, the place where you were able to jump, and also the surroundings there where the shift-boss, Mr. Zachman, told you to go in there and see if you couldn't help your partner to pinch it out."   There was not any objection made to the question; but, after the witness had completed his answer, counsel for defendants moved to strike out a part of it as incompetent under the issues made by the pleadings.   While it is a general rule that a party cannot sit by and wait until a witness has answered, and then take advantage of the answer if it be favorable to his interest, or move to strike it out if unfavorable, we may waive that objection to the motion in this instance, upon the assumption that counsel for defendants could not antici-

pate the answer that was actually made. The witness described the place where he was injured, and its surroundings, and in doing so stated that there was an opening in the trestle. over which a board had been kept, but that when he undertook to get out he discovered that the board was not there, and he was compelled to escape by moving out back of the truck. But, as we understand the evidence in this record, this all related to a time subsequent to his injury, and was not, and could not have been, a cause of it. The testimony was merely descriptive of his surroundings, and properly admitted. It did not tend to introduce a new element of negligence.

3. In admitting the conversation between plaintiff and Rohan, the superintendent of the smelter, we are of opinion that there was not any prejudicial error committed. The respondent, who was plaintiff below, has not made any appearance in this court or furnished any brief. We are therefore unable to know what his purpose was in introducing this conversation in evidence. It occurred many months after the injury and at a time when, according to plaintiff's own testimony, he was in the employ of the defendant company. In view of these facts, we are absolutely unable to know what plaintiff meant by asking Rohan if he could do anything for plaintiff—for his foot. Assuming that the plaintiff was seeking compensation for his injury, the refusal of Rohan to respond does not in any manner reflect upon the question of defendants' negligence or upon any of the defenses interposed. In the absence of any knowledge on our part of plaintiff's purpose in introducing this conversation, we should say that the evidence was immaterial; but, beyond that, it appears to us to be of no consequence whatever, either in favor of the plaintiff or against the defendants. This is emphasized by the fact that, so far as the record discloses, Rohan did not know anything of the facts surrounding plaintiff's injury at the time it occurred.

4. The action of the court in refusing to give instruction 13a above was clearly correct. Down to and including the word "make," the instruction correctly states the rule of law recognized everywhere; but the concluding clause is so far erroneous

as to vitiate the whole; and, to illustrate the vice in the instruction, we have but to assume that plaintiff did not exercise the care of a reasonably prudent man. Still, if his failure to do so was not a proximate or contributing cause of his injury, he might still recover. In other words, the instruction, as offered, ignores altogether the question of plaintiff's negligence being a proximate or contributing cause of his injury, but makes his bare negligence determinative of his right to recover—a doctrine which has never been asserted in this country so far as we know.

Appellants cite, in support of their contention that the court erred in refusing to give the instruction, *Russell Creek Coal Co.* v. *Wells,* 96 Va. 416, 31 S. E. 614; but, instead of bearing out counsel's contention, the decision in that case supports fully the doctrine we have just announced. The instruction considered in that case "told the jury that the plaintiff in this case was bound to exercise as much care in his own behalf as the defendant was required to exercise in his behalf, and negligence on the part of the defendant did not excuse the plaintiff from a failure to exercise such care, *if such failure was the cause of the accident.*" By italicizing the last phrase of that instruction, we give emphasis to the view we have announced and the wide distinction between the instruction considered in that case and instruction 13a above, which was refused.

Complaint is made of the refusal of the trial court to give certain other requested instructions. The matters referred to in offered instructions 15a and 16a are fully covered in instructions given. In our view of the case, the questions of assumption of risk and the defense that the injury to plaintiff was occasioned by an unavoidable accident were matters to be submitted to the jury under proper instructions. Without deciding, we doubt whether there was sufficient evidence of contributory negligence to justify the submission of that question; but, since it was submitted and resolved in plaintiff's favor, defendants cannot complain.

The evidence does not justify the giving of instruction 14a requested; while offered instructions 17a and 21a are clearly

erroneous—17a in attempting to place the burden of proving want of contributory negligence on plaintiff, and 21a in stating that it must appear from the evidence that plaintiff did not contribute to his injury, in order for him to recover. This case falls within the general rule that the defense of contributory negligence is a special one, to be pleaded and proved by the defendant. If, then, the evidence offered touching this defense was evenly balanced, the defendants failed in their effort to establish it, and the plaintiff might still recover; and under such circumstances it is not necessary that it should appear affirmatively that the plaintiff was free from negligence which contributed to his injury.

5. Plaintiff testified that as a result of his injury he was unable to work; but he was forced to tell that he went back into the employ of the defendant company in about two months after his injury, and received $3 per day wages. He testified to considerable profitable employment which he had had since his injury, and omitted any explanation of his failure to be at work at the time of the trial, except his general statement that he was unable to work. Dr. Kistler, who attended plaintiff at the time of his injury, stated that after he gave plaintiff's foot the last treatment, which was about eight weeks after the injury, "the foot was permanently cured," and, after examining plaintiff's foot at the trial, said: "From its appearance and my examination of it just now, there is no occasion for him to have a limp at the knee, ankle, or foot." In view of all this testimony, it seems to us that the verdict returned is excessive. We have no definite criterion by which to be governed in matters of this character, but feel disposed to say that a verdict for more than $3,000, under the circumstances presented here, would be excessive in our judgment.

The cause is remanded to the district court, with directions to grant a new trial, unless, within thirty days after the *remittitur* is filed in the district court, the plaintiff shall in writing consent that the amount of the judgment be reduced to $3,000. If such consent be given, the judgment will be modified accord-

ingly, and as modified will stand affirmed, and under those circumstances the order denying a new trial will also be affirmed.

MR. JUSTICE SMITH concurs.

MR. CHIEF JUSTICE BRANTLY, being absent, takes no part in the foregoing decision.