SEVANIN, ADMR., APPELLANT, *v.* CHICAGO, MILWAUKEE & ST. PAUL RY. CO., RESPONDENT.

(No. 4,669.)

(Submitted February 6, 1922.  Decided March 20, 1922.)

[205 Pac. 825.]

*Personal Injuries—Railroads—Insufficient Complaint—Defect Supplied by Answer—Safe Appliances—Duty of Master and Servant — Nonsuit — Defective Record on Appeal — Waiver.*

Personal Injuries — Proximate Cause — Defective Complaint Cured by Answer.

1. Complaint in a personal injury action which simply disclosed the negligence of the master, without a statement of facts showing that the negligence was the proximate cause of the injury, was insufficient; *held,* however, that the defect was cured by allegations in the answer showing causation.

Appeal and Error—Defective Record—Waiver by Failure to Move Dismissal.

2. Under section 9747, Revised Codes of 1921, providing that all objections to the record on appeal shall be deemed waived unless a motion to dismiss is made, an assignment of error that the trial judge settled the stenographer's transcript after he went out of office will not be entertained where the hearing on appeal was had by both parties on the theory that the transcript was correct, and where no motion to dismiss had been made.

Personal Injuries—Safe Appliances—Duty of Master and Servant.

3. While the master must exercise reasonable care to furnish his servant reasonably safe and suitable appliances with which to work, the servant is under a reciprocal duty of exercising reasonable and ordinary care in their use when furnished, such duty increasing with the dangerous character of the work.

Same—Master not Insurer of Safety of Servant.

4. The law does not impose upon the master the duty of providing his servant with appliances which would make it impossible for him to be injured, since such a rule would make the former an insurer of the safety of the latter.

Same—Master and Servant—Unsafe Appliances—Evidence—When Nonsuit Proper.

5. Plaintiff's intestate, a hostler's helper at defendant company's roundhouse, was electrocuted while attempting to thaw out a compressed air-pipe running parallel with but about four feet below a high tension wire, with a torch attached to an iron rod, while standing on a locomotive. The complaint charged negligence in failing to furnish the servant suitable appliances with which to do the work. *Held,* that in the absence of evidence showing that at the time of the accident the servant was acting within the scope of his employment, that the appliances used were furnished by defendant, or, if fur-

[62 Mont. 546.]

nished or their use acquiesced in by it,) that they were unsuitable if properly used, his case disclosing, on the contrary, that death was due to inattention and indifference to his own safety, a nonsuit was properly granted.

*Appeal from District Court, Wheatland County; John A. Matthews, Judge.*

JOSEPH GEORGE SEVANIN, as administrator of the estate of Panteli Simeon Katsios, deceased, against the Chicago, Milwaukee & St. Paul Railway Company. Judgment of nonsuit and plaintiff appeals. ' Affirmed.

*Mr. W. C. Husband,* for Appellant, and *Mr. Henry C. Smith,* of Counsel, submitted a brief; *Mr. Smith* argued the cause orally.

Was the negligence of the defendant the proximate · cause of the ·death of Katsios? The question of law involved in this inquiry is, on motion for a nonsuit, easily answered. If the act of the defendant in furnishing to the deceased, an immature, ignorant employee of foreign birth, for use in thawing out the air-pipes, an iron bar, a good conductor of electricity, when a wooden bar could more easily have been furnished, and allowing the practice to grow up (or making it necessary, by reason of furnishing no other method) of climbing, or to climb, upon the metal-covered cab of an engine, or motor, for the purpose of applying the heat, in and about a turntable and roundhouse, where drafts, gusts of wind, increased velocity of wind, and other causes made it probable, especially after dark, that the iron bar would be driven against a near-by trolley charged with electricity sufficient at all times to kill a man, at any moment, then we concede the motion for a nonsuit to have been properly granted. Otherwise, the situation involved a question which only the jury was empowered to answer. (*Killeen* v. *Barnes-King Dev. Co.,* 46 Mont. 212, 127 Pac. 89; *Kinsel* v. *North Butte M. Co.,* 44 Mont. 445, 120 Pac. 797; *Mize* v. *Rocky M. B. Tel. Co.,* 38 Mont. 521, 129 Am. St. Rep. 659, 16 Ann. Cas. 1189,

100 Pac. 971; *Hall* v. *Northern Pac. Ry. Co.,* 56 Mont. 537–543, 186 Pac. 340.)

The question as to whether the defendant had adopted a reasonably safe method for thawing the air-pipe was one of fact for the jury. (*Bourke* v. *Butte E. & P. Co.,* 33 Mont. 267, 83 Pac. 470; *Birsch* v. *Citizens' El. Co.,* 36 Mont. 574, 93 Pac. 940; *Giraudi* v. *Electric Imp. Co.,* 107 Cal. 120, 48 Am. St. Rep. 114, 28 L. R. A. 596, 40 Pac. 108; *Goe* v. *Northern Pac. Ry. Co.,* 30 Wash. 654, 71 Pac. 182; *Lundeen* v. *Livingston El. L. Co.,* 17 Mont. 32, 41 Pac. 995; *Verlinda* v. *Stone & W. E. Co.,* 44 Mont. 223, 119 Pac. 573; *Berg* v. *Boston & M. Con. C. & S. Co.,* 12 Mont. 212, 29 Pac. 545; *Neilson* v. *Missoula Creamery Co.,* 59 Mont. 270, 196 Pac. 357; *Stewart* v. *Stone & W. E. Corp.,* 44 Mont. 160, 119 Pac. 568; *Westlake* v. *Keating Gold M. Co.,* 48 Mont. 120, 136 Pac. 38; *Surman* v. *Cruse,* 57 Mont. 253, 187 Pac. 890.)

*Messrs. Murphy & Whitlock* and *Mr. L. D. Glenn,* for Respondent, submitted a brief; *Mr. A. N. Whitlock* argued the cause orally.

The duty of a master in the matter of furnishing an appliance is to exercise reasonable care to furnish reasonably safe appliances under all of the circumstances of the case. (*Forquer* v. *Slater Brick Co.,* 37 Mont. 427, 97 Pac. 843; *Makarites* v. *Chicago M. & St. P. Ry. Co.,* 59 Mont. 493, 197 Pac. 743.)

The employer, once he has exercised ordinary care, is not responsible for the manner in which the employee uses an appliance unless, as pointed out above, the situation is such as to require instruction or warning, about which no complaint is made here. There is a reciprocal duty upon the part of the employee when an appliance is furnished him to exercise ordinary care in its use (*Stewart* v. *Pittsburg Copper Co.,* 42 Mont. 200, 111 Pac. 723.) This duty of the servant to exercise care on his own part increases with the dangerous character of the work. Necessarily there is danger attending

any work upon or near wires of the character of the wire involved in this case, but that does not impose upon the master the duty of furnishing an appliance with which it would be impossible for a servant to get injured. In fact, it does not appear that any such appliance could have been furnished in this case. But it does appear that there was no danger whatever so long as the appliance was kept away from the wire which was doubtless known by the deceased to be charged with electricity, as no complaint is made of the fact that defendant permitted him to work without advising him of the proximity of a dangerous current. Where the injury results from the negligent use by an employee of a safe appliance, there is no liability. (Labatt on Master and Servant, 1520; *Forquer* v. *Brick Co.*, 37 Mont. 427, 97 Pac. 843; *Masich* v. *American S. & R. Co.*, 44 Mont. 36, 118 Pac. 764.)

As we view this case, if we assume that deceased was about his duties at the time, it seems to us that all of the evidence clearly indicates that the job in hand was the thawing of the pipe, that the method of doing this work and the details connected with it were entirely selected and determined by the servants who engaged therein, and the doctrine which is exemplified in the case of *Markinovich* v. *Northern Pac. Ry. Co.*, 55 Mont. 139, 174 Pac. 183, that the master is not responsible for an injury to his servant which results proximately from the manner in which the servants do their work applies. He is not required to supervise the disposition of his working force in carrying out the details of the employment, any more than he is required to direct the workmen in the use of simple tools and appliances, precludes recovery.

MR. COMMISSIONER AYERS prepared the opinion for the court.

On December 5, 1916, the Chicago, Milwaukee & St. Paul Railway Company, in operating its main line of railroad from Chicago to Seattle, maintained a turntable at Harlowton, then Meagher, now Wheatland, county. Harlowton being the sta-

tion to which its trains coming from the East were changed from steam to electric power, it was necessary to turn the steam engines on said turntable for their return trips. The turntable was operated and propelled by compressed air, conveyed to it by an overhead iron pipe, and in cold weather the air would become frequently congested by frost. The plaintiff, administrator of the estate of Panteli Simeon Katsios, deceased, by his amended complaint of September 28, 1918, seeks to recover from the defendant company $25,000 for the death of Katsios, negligently caused by it. He alleges the foregoing facts, and that Katsios at the time of his death, December 5, 1916, and for a long time prior thereto, was an employee of the defendant, and was employed by it in interstate commerce, to make repairs and improvements on its railway lines and to assist in operating the said turntable, and in operating and running engines in and out of the roundhouse at Harlowton; that the employees were directed, and it became customary for them to thaw said pipe by applying fire thereto, which was done by means of an iron rod with a lighted torch of waste fastened to one end, and in order to reach the air-pipe they would run an engine under it, climb on top of the cab thereof, and hold the torch aloft to the air-pipe. Near the pipe and paralleling it ran an electric wire of high voltage, carrying current sufficient at all times to kill human beings. Then follows the allegation of negligence to the effect that the defendant directed and allowed its servants (no mention of deceased as one of them) to stand on an engine and use an iron rod for a torch handle in proximity to the high-voltage wire, both of which were effectual conductors of electricity, and that it negligently failed to insulate the iron engine, or to furnish a nonconductive bar for the torch; that deceased, "while using the said bar in the performance of his work under the defendant, and exercising ordinary care on his part and ignorantly standing on an iron conductor, suffered grievous bodily injury, by the escape of said electric current into his body,

through said bar,'' which caused his death. That this complaint would not withstand an attack by demurrer is apparent. In a case of this character the complaint must disclose not only the negligence, but facts showing that the negligence was the proximate cause of the injury causing death. (*Allen* v. *Bear Creek Coal Co.*, 43 Mont. 269, 115 Pac. 673; *Glover* v. *Chicago M. & St. P. Ry. Co.*, 54 Mont. 446, 171 Pac. 278; *Stones* v. *Chicago, M. & St. P. Ry. Co.*, 59 Mont. 342, 197 Pac. 252.) The complaint alleges the negligent furnishing of appliances, but it does not set out facts showing how the accident occurred, nor does it allege any facts concerning deceased's whereabouts, what he was doing with said rod, what work he was engaged in, or on what iron conductor he was ignorantly standing when he received the injury. If we were to infer from plaintiff's complaint, in addition to his allegation above quoted, that deceased was following the alleged custom of the employees and standing on an engine, holding aloft an iron rod with a torch on one end which he was applying to the air-pipe for the purpose of thawing it, we would be reading into the complaint just that much.

The complaint was not attacked by demurrer or otherwise or at all before the trial. The defendant answered and sought to raise the sufficiency of the complaint at the trial by objection to the introduction of testimony. This attack would have been good had it not been for the affirmative allegations of its answer to the effect that deceased climbed upon an engine and with a torch on the end of an iron rod was applying the same to the compressed-air pipe, which had become frozen, when he brought the rod in contact with the electric wire, and that by reason thereof the current was communicated to his body and caused his death. The electric wire, the air-pipe, the engine, and the iron rod are described by the affirmative allegations of the answer so that there is no room for doubt but that they are the same as mentioned in the complaint. The answer supplies exactly what the com-

plaint lacks, the facts showing causation, and that one pleading may provide necessary allegations omitted from the pleading of an adversary is the rule at common law (1 Chitty on Pleading, p. 703), and has been adopted and recognized by all states proceeding under the Code system (1 Sutherland on Code Pleading, Practice, and Forms, sec. 361; Bliss on Code Pleading, 3d ed., sec. 437; Pomeroy on Code Remedies, sec. 579; 31 Cyc. 714.) This has long and consistently been the rule in Montana. (*Hershfield & Bro.* v. *Aiken,* 3 Mont. 442; *Murphy* v. *Phelps,* 12 Mont. 531, 31 Pac. 64; *Hamilton* v. *Great Falls St. Ry. Co.,* 17 Mont. 334, 42 Pac. 860, 43 Pac. 713; *Lynch* v. *Bechtel,* 19 Mont. 548, 48 Pac. 1112; *Crowder* v. *McDonnell,* 21 Mont. 367, 54 Pac. 43; *Hefferlin* v. *Karlman,* 29 Mont. 139, 74 Pac. 201; *Harmon* v. *Fox,* 31 Mont. 324, 78 Pac. 517; *Mantle* v. *White,* 47 Mont. 234, 132 Pac. 22; *Stephens* v. *Conley,* 48 Mont. 352, Ann. Cas. 1915D, 958, 138 Pac. 189.)

The plaintiff desiring to bring before this court the evidence [2] introduced below, gave notice of settlement of the stenographer's transcript before Honorable John A. Matthews, judge who tried the case, but who at the time was a justice of this court. Notwithstanding his retirement from the trial bench, Justice Matthews heard and settled the stenographer's transcript. The defendant did not appear at the time, but saved its exception to his action in the settlement of the same, and urges here as error that he, not being a district judge where the action was pending, had no authority under the statutes to settle the transcript. No contention is made that the transcript is not correct or that the consideration thereof by this court will prevent a fair hearing, consideration, and decision of the appeal on its merits. It is physically here and it is manifestly correct. True, it did not come here in the identical way provided by statute (Laws 1915, Chap. 149), but, being here, it must be considered unless removed by motion to dismiss the appeal for lack of a transcript, or to strike the alleged transcript from the record, or some kindred

motion. Section 9747, Revised Codes of 1921, which was section 7116, Revised Codes of 1907, provides: "All objections to the record and brief of appellant shall be deemed waived unless a motion to dismiss is made because thereof, except such as will prevent a fair hearing, consideration, and decision of the appeal on its merits." No such motion or kindred motion was made, and no showing is attempted that the consideration of the transcript as settled will prevent a fair hearing, consideration, and decision of the appeal on its merits. On the contrary, the hearing proceeded in this court on the theory that the transcript was entirely correct. To take any other view than that of considering the transcript would be chasing a shadow at the expense of letting the substance escape.

## ON THE MERITS.

At the conclusion of plaintiff's case, defendant moved for a nonsuit, which motion was sustained, and judgment entered thereon. This appeal is from the judgment, and the only error specified is that "the court erred in sustaining the defendant's motion for a nonsuit." Thus a consideration of the entire testimony has been necessary.

Deceased was a hostler's helper at the roundhouse, and had been so engaged at least a month and a half immediately before his death. Plaintiff never worked on the same shift with deceased, but did the same work on the opposite shift. He and his partner used the same rod for thawing the air line by climbing on the cab of an engine. The air line was four or five feet from the electric wire. Eli Evanoff, the only eye-witness to the accident, testified that deceased, when killed, was standing on top of the cab; that he had an iron rod in his hand; that there was lighted waste on one end of it; that he handed the rod down and twice witness placed waste on it and handed it back, and then when in the act of handing it down again "he [meaning deceased] swung into the electric wire and it came into contact, and that is the end of it." There was a strong wind, and the witness

expressed an opinion that the wind blew the rod against the wire. However, the testimony of the witness Baxter, an engine dispatcher, is to the undisputed effect that the electric wire is higher than the air-pipe. The very nature of things—the electric wire higher than the air-pipe and four or five feet away, the iron rod about ten feet long, necessarily heavy—would destroy the witness' theory that the wind blew the rod against the wire. To do so the wind must not only blow the rod sidewise, but must actually lift it into the air. Evanoff further testified that deceased brought the engine up to where it was standing when he was killed; that the rod was close to the turntable; that deceased secured it without direction from anyone; that the foreman did not instruct him about his work that morning; that deceased was talking to Baxter, the engine dispatcher; and that "they were both talking at the turntable and pointing to the frozen pipe; that is all I know." Hence we must conclude from the record that deceased brought the engine to the place where it stood when he was killed, without instructions from anyone. He secured the iron rod and mounted the cab of the engine without instruction; and the record is silent as to whether these acts were in fact a part of his duties, and is also silent as to what were his duties as a hostler's helper, and, in the absence of any showing, we must also conclude that the plaintiff has not discharged his burden in this respect. The most that can be urged is that the appliances, the engine and the rod, were selected by deceased and used with defendant's acquiescence, but, if any negligence could be predicated upon such acquiescence, it must be based upon failure to warn, which is not relied upon as a ground of negligence.

On the other hand, if we assume that the appliances, the engine and the rod, were furnished by the defendant, or that their use was acquiesced in by it, there is no evidence that they were unsuitable if used with ordinary care. True, the rod was a conductor of electricity, but the electric wire was four or five feet from the air line where the rod was being

used, and above it, and certainly no more than ordinary care was necessary to keep the rod from coming in contact with the wire under those circumstances.

The master must exercise reasonable care to furnish rea-
[3] sonably safe and suitable appliances under all the circumstances of the case. (*Fritz* v. *Salt Lake etc. Light Co.,* 18 Utah, 493, 56 Pac. 90; *Forquer* v. *Slater Brick Co.,* 37 Mont. 427, 97 Pac. 843; *Wallace* v. *Chicago, M. & S. P. Ry. Co.,* 48 Mont. 427, 138 Pac. 499; *Surman* v. *Cruse,* 57 Mont. 253, 187 Pac. 890; *Markarites* v. *Chicago, M. & St. P. Ry. Co.,* 59 Mont. 493, 197 Pac. 743.) There is a reciprocal duty upon the part of an employee, when the appliance is furnished him, to exercise reasonable and ordinary care in its use. (*Stewart* v. *Pittsburg Copper Co.,* 42 Mont. 200, 111 Pac. 723.) This duty on the part of the servant must necessarily increase with the dangerous character of the work. Danger is attendant upon any work near wires of the character involved in this case. But we cannot impose upon the master the duty of
[4] furnishing an appliance which would make it impossible for the servant to become injured. Such a doctrine would extend the rule unreasonably and to the point of making the master an insurer of the safety of the servant. As a matter of fact, in this case it does not appear that any such appliance could have been furnished, while it does appear that there was no danger if the appliance furnished was kept away from the wire which was known by deceased to be heavily charged with electricity, for no complaint is made that the defendant was negligent in failing to warn him of its dangerous character.

The record fails to show that the deceased, when injured,
[5] was acting within the scope of his employment, that the appliances complained of were furnished him by defendant, or, even if presumed to have been furnished by the defendant or their use acquiesced in by it, it fails to show that they were unsuitable if properly used by him. This plaintiff was obliged to establish before recovery could be had, for he must

prove that the defendant failed to perform its duty toward the deceased, as charged in the complaint, and, in consequence of such failure, that deceased received the injury which caused his death. (*Pennsylvania Co.* v. *Whitcomb,* 111 Ind. 212, 12 N. E. 380; 4 Thompson on Negligence, sec. 3866; Wood on Master and Servant, secs. 345, 346; *Boyd* v. *Blumenthal,* 3 Penne. (Del.) 564, 52 Atl. 330; *Markarites* v. *Chicago, M. & St. P. Ry. Co.,* 59 Mont. 493, 197 Pac. 743.) But from the record before us we are justified in saying further that the appliances, regardless of how they came to the hands of the deceased, were reasonably safe and suitable under all the facts and circumstances of the case, and that the injury causing death was due to the inattention and indifference of deceased to his own safety. When injury results from the negligent use by a servant of a reasonably safe and suitable appliance, there is no liability. (*Cahill* v. *Hilton,* 106 N. Y. 512, 13 N. E. 339; *Masich* v. *American Smelting & Refining Co.,* 44 Mont. 36, 118 Pac. 764; Labatt on Master and Servant, sec. 1520.) To say otherwise would be requiring the master to take better care of the servant than he, the servant, takes of himself.

We recommend that the judgment be affirmed.

PER CURIAM: For the reasons given in the foregoing opinion, the judgment is affirmed.

*Affirmed.*