MANTLE, RESPONDENT, *v.* WHITE, APPELLANT.

(No. 3,236.)

(Submitted March 20, 1913.   Decided April 9, 1913.)

[132 Pac. 22.]

*Real Property—Trusts—Creation—Insufficiency of Writing— Presumptions — Pleadings —Reply —Estoppel —De Minimis Doctrine.*

Real Property—Trusts—Insufficiency of Writing.
1. *Held*, that an instrument claimed by plaintiff to have created an express trust in real property in his favor, which neither indicated an intention on the part of the plaintiff to create a trust nor showed that defendant was accepting, or acknowledging the existence of, one, nor the purpose of its creation, nor what disposition defendant was to make of the property, was insufficient to constitute the latter a trustee as alleged.

Same—Presumptions—Statute of Frauds.
2. From the fact that the subject of an alleged trust was real property, the presumption arises that the creation of it was evidenced by a writing as required by the statute of frauds.

Same—Evidence—Pleadings—Reply—Estoppel.
3. Plaintiff having in his reply specifically denied allegations in the answer of defendant claimed by him on appeal to have constituted a sufficient statement to meet the requirements of the rules for establishing an express trust in realty, was not in position to rely upon defendant's pleading to supplement his own insufficient showing in that respect.

Personal Property—Trusts—Creation.
4. A trust concerning personal property may be created in parol.

Appeal and Error—Reversal—*De Minimis* Doctrine.
5. Under the maxim *"De minimis non curat lex,"* a new trial will not be ordered, even though the cause was tried upon an erroneous theory of the law applicable, where, with the exception of $2.38, the claims of the plaintiff were offset by those of the defendant.

*Appeal from District Court, Silver Bow County; John B. Mc-Clernan, Judge.*

ACTION by Lee Mantle against W. McC. White.   From a judgment for plaintiff and an order denying a new trial, defendant appeals.   Reversed and remanded, with directions to dismiss complaint.

*Messrs. Maury, Templeman & Davies,* for Appellant, submitted a brief; *Mr. Templeman* argued the cause orally.

Assuming, under Montana practice, the complaint in an action to enforce an express trust in lands need not show an instru-

ment in writing, either creating or declaring the trust, may an express trust in lands be proven by oral testimony in Montana? This court has answered the inquiry in the negative in *Rutherford* v. *Talent,* 6 Mont. 132, 9 Pac. 821, *Chowen* v. *Phelps,* 26 Mont. 524, 69 Pac. 54, and *Lynch* v. *Herrig,* 32 Mont. 267, 80 Pac. 240.

The agreement creating the express trust was denied. The statute of frauds was not pleaded as a defense. It was not necessary under the Montana practice. The defendant may avail himself of such defense. (*King* v. *Benson,* 22 Mont. 256, 56 Pac. 280; *Christiansen* v. *Aldrich,* 30 Mont. 446, 76 Pac. 1007; *Marshall* v. *Trerise,* 33 Mont. 28, 81 Pac. 400; *Mitchell* v. *Henderson,* 37 Mont. 515, 97 Pac. 942.)

Did the written articles of dissolution of partnership of W. McC. White & Company create or declare an express trust in lands of which the plaintiff may avail himself? They lack the unequivocal intent to create an express trust, without which the writing fails as an express trust instrument. We may pertinently ask here, What is the trust? What is the purpose of the trust? Where are the essentials of an express trust instrument? Where are any signs thereof, and such positive signs as are required by the courts? (See *Skeen* v. *Marriott,* 22 Utah, 73, 61 Pac. 296; *Learned* v. *Tritch,* 6 Colo. 432; 3 Words and Phrases, 2611; Pomeroy's Equity Jurisprudence, 3d ed., sec. 1009.) In the case of resulting trusts, or trusts arising by operation of law, the intentions expressed by the parties at the time may not be so material to the court; but in the case of an express trust, as the trial court rules here, unequivocal intent is the cardinal prerequisite proof required by the court in support thereof, and that for the manifest reason the court merely undertakes to carry out the expressed intent, and takes no chance of making a settlement concerning which possibly the settler never dreamed. (*Bliss* v. *Bliss,* 20 Idaho, 467, 119 Pac. 451, and cases cited.)

If the articles dissolving and settling the partnership affairs did not constitute an express trust, then most clearly does the doctrine of laches apply, since, from the moment of dissolution and settlement effected thereby, Mantle and Warren would have

had the right to get from the defendant their shares, and, conceding the right, it follows that Mantle and Warren had their appropriate remedy in the law. The evidence uncontradictedly shows that neither sought any enforcement of their right for a period of more than sixteen years after private settlement effected,—that is, to the property awarded plaintiff by the trial court, and we know of no enforceable remedy open to them at the time. That the evidence shows plaintiff's right barred by laches is manifested by the following authorities: *Currier* v. *Studley,* 159 Mass. 17, 33 N. E. 709; *Lendholm* v. *Bailey,* 16 Colo. App. 190, 64 Pac. 586; *Riddle* v. *Whitehill,* 135 U. S. 621, 10 Sup. Ct. Rep. 924, 34 L. Ed. 283; *Kendall* v. *Hackworth,* 66 Tex. 499, 18 S. W. 104.

This court may well hold that whatever action Mantle or Warren had was founded upon the written articles of dissolution. If this be so, and the written articles are the foundation for the right to recover herein, then plainly is plaintiff's action barred by section 6445 of the Revised Codes, which was pleaded as a defense in the answer and urged before the trial court. They plainly gave Mantle and Warren a right to recover their shares forthwith, and the articles themselves would have effectually estopped the defendant from complaining that he held the Mantle shares in trust for any purpose whatsoever. This seems to us to be self-evident, but was not thought of any consequence by the trial court. Our position is that the articles were conclusive upon the parties, since no mistake, fraud or accident is averred or suggested incident to their execution. (See authorities previously cited; and *Holmes* v. *Hawes,* 43 N. C. 21. See, also, this court's discussion of the subject of limitations in *Schaeffer* v. *Miller,* 41 Mont. 417, 137 Am. St. Rep. 746, 109 Pac. 970, and *Chowen* v. *Phelps,* 26 Mont. 524, 69 Pac. 54.)

*Messrs. F. W. Haskins, John H. Smith, Chas. Mattison,* and *M. J. Cavanaugh,* for Respondent, submitted a brief; *Messrs. Haskins* and *Cavanaugh* argued the cause orally.

No precise form of words is required to raise a use, and if the words amount to a present contract of sale or bargain, a use is

raised. (*Jackson* v. *Fish*, 10 Johns. (N. Y.) 466.) No special
words or form necessary to raise a trust. (*Throop* v. *Hatch*, 3
Abb. Pr. (N. Y.) 23.) The written agreement of October 19,
1891, constituted a continuing and executory contract, indefinite
as to the terms of its existence, but positive as to the interests
in the real estate held by appellant for the benefit of Mantle &
Warren. It declared the interests of the parties but was silent
as to the time it should be delivered. It could not be executed
until a conveyance of the title was made by White; or at least
until some act by him amounting to an ouster or repudiation of
his trust, brought home to Mantle and Warren. As White before
held all the property with the right to sell it for the benefit of
the firm, and no change being made in this respect by the writ-
ing, sales in his own name as trustee were not inconsistent with
the trust relation, and therefore could not start the running of
the statute of limitations or laches in his favor. (*Bowes* v. *Can-
non*, 50 Colo. 262, 116 Pac. 339; *San Pedro Lumber Co.* v. *Rey-
nolds*, 111 Cal. 588, 44 Pac. 309, 311; *Ganley* v. *Troy City Nat.
Bank*, 98 N. Y. 487; *Mantle* v. *Speculator Min. Co.*, 27 Mont. 473,
71 Pac. 665.) The written agreement was a valid declaration
of an express trust for the interests specified therein. (*Compo*
v. *Jackson Iron Co.*, 49 Mich. 39, 12 N. W. 901.) Where there
is a writing showing that the legal title is held by one and the
equitable title by another, courts will imply a trust from the
contract of the parties, though there are no words of trust in the
writing. (1 Perry on Trusts, sec. 122; *Petersen* v. *Taylor*, 4 Cal.
Unrep. 49, 33 Pac. 436, 438.)

The writing of October 19 created an express trust, and when
it comes to applying to it the statute of limitations, or the doc-
trine of laches, it must be construed as an express trust. (Pome-
roy's Equity Jurisprudence, sec. 1010; *Lane* v. *Lane*, 8 Allen
(Mass.), 350.) If such a trust does not expire by its terms, or
is not repudiated, it will continue to exist until the death of the
trustee, so that the statute will not run against it until that time.
(25 Cyc. 1169; *Shepherd* v. *Shepherd's Estate*, 108 Mich. 82, 65
N. W. 580; *Jewell* v. *Jewell's Estate*, 139 Mich. 578, 102 N. W.
1059; *Mabie* v. *Bailey*, 95 N. Y. 206; *Matter of Underhill*, 1 Con.

541, 9 N. Y. Supp. 455.) There is a class of express trusts that are not expressly declared by the terms of the instrument but which are inferred by a construction of all the terms and conditions. They are all cases where the intention of the parties to create an express trust for some purpose is not expressed unequivocally, but the court infers that was the intention of the parties, from the nature of the transaction, or from the objects and purposes of the agreement. When such a trust is found by the court to exist, it is in every sense an express trust, and has no resemblance whatever to a resulting or constructive trust. To call this class of trusts, as is often done, implied trusts, is not only erroneous, but productive of confusion and mistake. (Pomeroy's Equity Jurisprudence, sec. 1010; *Lane* v. *Lane,* 8 Allen (Mass.), 350.) The statute of limitations does not run against express trusts, for the reason that the possession of the trustee is the possession of the *cestui que trust,* nor does the doctrine of laches apply. (*White* v. *Costigan,* 138 Cal. 564, 72 Pac. 178.) An express trust need not be created by a writing but only manifested by a writing; for if there be written evidence of the trust, the danger of parol evidence against which the statute is directed is effectually removed. (Perry on Trusts, sec. 79.) An admission in a verified answer is sufficient to create a trust. (*Stanton* v. *Quinan,* 91 Cal. 1, 27 Pac. 517.)

That the writing was sufficient to create an express trust, see *Urann* v. *Coates,* 109 Mass. 581, 117 Mass. 41; *Petersen* v. *Taylor,* 4 Cal. Unrep. 49, 33 Pac. 436, 437; 1 Perry on Trusts, sec. 122.

Does the complaint state a cause of action? Though the trust pleaded was required by law to be in writing, it was not necessary, as claimed by the defendant, to allege it was in writing. The general rule is that where a complaint sets out the terms and conditions of an agreement and the violation of that agreement is charged against the defendant, if it is such an instrument as the law requires to be in writing, and the complaint is silent as to whether it was oral or in writing, courts will presume it was a lawful written instrument, until the contrary appears. (*Van Doren* v. *Tjader,* 1 Nev. 380, 90 Am. Dec. 498.) Where it is alleged in a complaint that an agreement is en-

tered into, if the law requires such an agreement as is alleged to be in writing, it will be presumed that the agreement alleged is in writing, and the complaint will not be subject to a general demurrer. (*Hefferlin* v. *Karlman,* 29 Mont. 139, 74 Pac. 201; *Sweetland* v. *Barrett,* 4 Mont. 217, 1 Pac. 745; *Mayger* v. *Cruse,* 5 Mont. 485, 6 Pac. 333.) In the absence of allegations showing a parol agreement on the face of the complaint, the trust agreement will be presumed to be in writing. (*Broder* v. *Conklin,* 77 Cal. 330, 19 Pac. 513; *Feeney* v. *Howard,* 79 Cal. 525, 12 Am. St. Rep. 162, 4 L. R. A. 826, 21 Pac. 984; *Wakefield* v. *Greenhood,* 29 Cal. 597; *Swenson* v. *Swenson,* 17 S. D. 558, 97 N. W. 845.)

Delay alone is not laches. During the delay some new condition must intervene which would render the enforcement of the trust, otherwise unimpeachable, contrary to the principles of equity. (*Du Bois* v. *Clark,* 12 Colo. App. 220, 55 Pac. 750.) Neither laches, waiver nor acquiescence can be predicated upon mere delay, where the plaintiff did not have a knowledge of the facts giving him a right to commence his action; and no conduct of his, which otherwise might be sufficient to show an election, can be so construed, if at the time he was ignorant of his rights. (24 Am. & Eng. Ency. of Law, 2d ed., p. 626.) The burden of proving laches and the facts giving rise to his right to relief on this ground is on the defendant. (*Baker* v. *Lever,* 67 N. Y. 304, 23 Am. Rep. 117; *Baker* v. *Spencer,* 47 N. Y. 562; *Engeman* v. *Taylor,* 46 W. Va. 669, 33 S. E. 922, 940.) Laches will not be imputed to a *cestui que trust* because of his failure of action, so long as the acts of the trustee are consistent with his duty under his trust. (*Carter* v. *Uhlein* (N. J.), 36 Atl. 956.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

Prior to October 1, 1891, Lee Mantle, Charles S. Warren, W. McC. White, and L. C. White were copartners doing business in Silver Bow county as W. McC. White & Co. On October 19, 1891, the partners executed an instrument in writing, as follows:

"On the first day of October, A. D. 1891, the firm of W. McC. White & Co. was dissolved by mutual consent, Lee Mantle and Charles S. Warren retiring therefrom. In settlement made, Lee Mantle and Charles S. Warren have paid jointly $4/9$ of the net liabilities of the firm less credits to their accounts; the balance paid amounting to $1,487.59. Said Mantle and Warren shall receive $4/7$ of an undivided $1/4$ interest in the Montana Avenue Addition; also $4/7$ of an undivided $1187/8$ acres in the south $1/2$ of the S. W. $1/4$ of section 29 and the north $1/2$ of sec. 32, T. 3 N. R. 7 W., same being subject to a mortgage from McC. White et al. to Frederick Cook and James O'Brien which is offset by a mortgage E. A. Macrum to W. McC. White et al.; also $4/7$ of $625.00 and 2 yrs. int. on same due July 15, 1892; also $4/9$ undivided interest in the Bottle Placer comprising the N. E. of sec. 25 $3/8$, same being subject to the proportion of pledged payment of $1,000 in the event of sale thereof; also $4/9$ interest in $500 note of W. K. Quarles, $4/9$ of 30 shares stock Security Abstract Co., $4/9$ of 500 shares stock Butte Sewer Pipe & Tile Co., & $4/9$ of $100 bond of the Silver Bow Club."

Some time in 1908 this suit was commenced by Mantle, as the successor of the Mantle and Warren interests, to have McC. White declared to be a trustee of certain of the properties originally held by the copartnership, and for an accounting. It is alleged that at the time of the dissolution it was agreed by Mantle and Warren, on the one hand, and McC. White, on the other, that the record title to the Mantle and Warren interests should be held by White in trust for the use and benefit of Mantle and Warren, and that White should upon demand convey the property to Mantle and Warren, or to such person or persons as they might nominate. The assignment of the Warren interest and a demand upon and refusal by the defendant are then pleaded, followed by the prayer. Defendant White in his answer sets forth a copy of the writing of October 19, 1891; he denies the creation of any trust and alleges, as affirmative defenses, (1) the substitution of a new agreement by which all the property rights of the members of the copartnership were determined and a complete adjustment and settlement made,

and (2) he pleads the bar of the statutes of limitation. Issues were joined upon the affirmative allegations of the answer, and a trial to the court without a jury had, which resulted in findings and judgment in favor of the plaintiff. From that judgment and an order denying him a new trial, the defendant appealed.

There are some twenty-eight findings of fact and nine separate conclusions of law by the trial court, but they are all made to hinge upon the determination of a single question raised by the lower court's first conclusion of law, which reads as follows: "That by operation of the written agreement of October 19, 1891, admitted in the pleadings, the defendant became the trustee of an express trust of the property, real and personal, mentioned in said agreement and allotted to the plaintiff and Chas. S. Warren." Did this memorandum constitute White a trustee of an express trust in favor of Mantle and Warren? If it had been executed since the adoption of our Codes in 1895, it is very clear that it would not have the effect attributed to it by the trial court, for it fails altogether to meet the requirements of the rules which the Codes prescribe. The Codes declare: "A trust is either (1) voluntary; or (2) involuntary." (Rev. Codes, sec. 5364.) "A voluntary trust is an obligation arising out of a personal confidence reposed in and voluntarily accepted by one for the benefit of another." (Sec. 5365.) "An involuntary trust is one which is created by operation of law." (Sec. 5366.) "The person whose confidence creates the trust is called the trustor; the person in whom the confidence is reposed is called the trustee; and the person for whose benefit the trust is created is called the beneficiary." (Sec. 5367.) "Subject to the provisions of section 4537, a voluntary trust is created, as to the trustor and beneficiary, by any words or acts of the trustor, indicating with reasonable certainty: (1) An intention on the part of the trustor to create a trust; and (2) the subject, purpose and beneficiary of the trust." (Sec. 5370.) "Subject to the provisions of section 4537, a voluntary trust is created, as to the trustee, by any words or acts of his indicating, with reasonable certainty: (1) His acceptance of the trust, or his ac-

knowledgment, made upon sufficient consideration, of its existence; and (2) the subject, purpose and beneficiary of the trust." (Sec. 5371.) "No trust in relation to real property is valid unless created or declared: (1) By a written instrument, subscribed by the trustee or by his agent thereto authorized by writing; (2) by the instrument under which the trustee claims the estate affected; or (3) by operation of law." (Sec. 4537.)

At the time the writing was executed, section 217, Fifth Division, Compiled Statutes of 1887, was in force. So far as applicable that section provides: "No * * * trust * * * concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered, or declared, unless by act or operation of law, or by deed or conveyance in writing subscribed by the party creating, granting, assigning, surrendering, or declaring the same, or by his lawful agent thereunto authorized by writing." A review of the authorities will disclose that, so far as applicable to the facts of this case, no appreciable change in the rules of law was wrought by the adoption of our Codes. Indeed, it was the general purpose of the Codes to crystallize in concrete form the rules of law as they already existed.

After referring to the rule under the statute of frauds requiring a trust concerning real estate to be created, manifested or proved by writing, the author of the article on Trusts, in 39 Cyc. 57, says: "While it is essential to the creation of a trust that there be an explicit declaration of trust, or circumstances which show beyond reasonable doubt that a trust was intended to be created, no formal, technical, or particular words are necessary, but it is sufficient if an intention to create a trust and the subject matter, purpose and beneficiary are stated with reasonable certainty. Indeed, the use or nonuse of the technical words 'trust' and 'trustee' is not controlling, although it will be given weight, it being held that their absence does not prevent a declaration of trust from being sufficient, and that their use is not of itself sufficient to create a trust. Where no intent to create a trust appears, none will be held to exist, regardless of the form of words used." The same doctrine is stated in 28

American and English Encyclopedia of Law, second edition, 879, as follows: "The statute requires that the written evidence, although it need not be expressed in formal or technical language, must be sufficient to establish the whole trust; not only that there is a trust, but what it is. It should identify the property or interests to which the trust relates, or should afford means by which that identity may be made certain, and it should disclose the terms of the trust."

In 1 Beach on Trusts and Trustees, section 40, it is said: "But while no form of words is prescribed, or is essential, the instrument by which the creation of a trust is manifested must be properly executed, and it must set forth with sufficient clearness and definiteness the intention to create a trust. The writing must show, not only that a trust of legal estate was created, but it must indicate also the nature and terms of the trust."

In 1 Perry on Trusts and Trustees, section 82, the same rules are stated as follows: "Any agreement or contract in writing, made by à person having the power of disposal over property, whereby such person agrees or directs that a particular parcel of property or a certain fund shall be held or dealt with in a particular manner for the benefit of another, in a court of equity raises a trust in favor of such other person against the person making such agreement, or any other person claiming under him voluntarily or with notice; and the statute of frauds will be satisfied if the trust can be manifested or proved by any subsequent acknowledgment by the trustee, as by an express declaration, or any memorandum to that effect, or by a letter under his hand, or by his answer in chancery, or by his affidavit, or by a recital in a bond or deed, or by a pamphlet written by the trustees, or by an entry in a bank deposit book; in short, by any writing by which the fiduciary relation between the parties and its terms can be clearly read."

In Flint on Trusts and Trustees, section 34, it is said: "No particular expressions are necessary to create a trust; any language clearly showing the settler's intention is sufficient if the objects, property, and the disposition of it are definitely stated; and the statute will be satisfied if the trust can be manifested

or proved by any subsequent acknowledgment by the trustee, as by an express declaration by him, or any memorandum to that effect, or a letter by him, or his answer in equity, or his affidavit, or a recital in a bond, or deed, or pamphlet, by the trustee; finally by any writing showing the fiduciary relation of the parties and the conditions of it.''

Tested by these general rules which were in force at the time the writing of October 19, 1891, was executed, or by the rules prescribed by the Code, and the result is the same. There is not the slightest indication in the writing that Mantle and Warren, or either of them, intended to create a trust. Neither is there any intimation by White that he was accepting a trust or acknowledging the existence of one. And it certainly cannot be insisted that this writing reveals the purpose for which this trust was created, if created at all. No one would have the temerity to say that this writing discloses upon its face that White was to make any disposition of the Mantle and Warren interests. The fair, reasonable construction to be given to the language employed in the writing would tend rather to establish that it was the purpose of all the parties to dissolve whatever relationship of trust or confidence existed by virtue of the partnership, and to reduce the parties to the condition of strangers dealing with each other at arm's length.

It will not do for respondent to urge his suggestion that, if the evidence fails to establish an express trust, it may be sufficient to constitute the transaction a constructive or resulting trust. There is not anything in the pleadings to justify such a conclusion. The complaint counts upon an express trust; and while the particular character of the transaction by which the alleged trust was created is not revealed by the complaint, from the [2] fact that the trust—if one was created—had to do with real property, the presumption arises that such trust, if created by the voluntary act of the parties, was evidenced by an instrument in writing in conformity with the provisions of our statute of frauds. (*Hefferlin* v. *Karlman*, 29 Mont. 139, 74 Pac. 201; *Sweetland* v. *Barrett*, 4 Mont. 217, 1 Pac. 745; *Mayger* v. *Cruse*, 5 Mont. 485, 6 Pac. 333.) The record discloses that plaintiff

relied upon this written instrument of October 19, 1891, and the trial court made it the basis of its decree.

It is also suggested in the brief of respondent that there is a [3] sufficient statement in the verified answer of this defendant in the court below to meet the requirements of the rules for establishing an express trust; but in this respondent overlooks three important facts: (1) If the answer be accepted as establishing a trust, it is a trust for a purpose altogether different from that which the court found was created; (2) the respondent in his reply specifically denied the allegations in the answer, upon which he now relies for assistance; and (3) the trial court found that those allegations in defendant's answer were not true. In the light of these facts it ill becomes respondent to make this suggestion.

While there is no magic in the word "trust" or "trustee," and any agreement, however informal, which indicates with reasonable certainty the intention of the trustor to create a trust, the acceptance or acknowledgment thereof by the trustee, and the subject, purpose, and beneficiary, will be held to be sufficient, still this court cannot change the law in aid of a litigant. Every element essential to the creation of a trust is wanting in this writing, and to hold it sufficient involves the necessity of writing or reading into it provisions not found there, and to that extent making for the parties a contract materially different from the one they made for themselves. And the reason for the rules applied here is not wanting. In the light of the facts of this particular case, the righteousness of those rules is apparent. For more than sixteen years this plaintiff permitted the defendant to pay all the taxes upon the lands in dispute and stood by without protest, and saw him handle the property in controversy as his own; and now, after the lapse of all these years, without explanation for his delay, he seeks to avoid the defense of laches or the defense of the bar of the statutes of limitation by claiming that the defendant during all those years was the trustee of an express trust for his use and benefit. It was doubtless to prevent the assertion of just such stale demands as this, under the guise of the enforcement of a trust, that the rule was

adopted that the evidence of such relationship shall be direct and certain (*Sheehan* v. *Sullivan,* 126 Cal. 189, 58 Pac. 543); and, if it concerns real estate, that it shall have the added stability furnished by a writing.

In so far as the plaintiff seeks to establish an express trust concerning real estate, he fails altogether. A trust concerning [4] personal property might have been created in parol (*Hellman* v. *McWilliams,* 70 Cal. 449, 11 Pac. 659); but the trial court as well as the parties apparently proceeded upon the theory that the rights of the parties were to be determined altogether by the writing of October 19, 1891. The theory adopted was an [5] erroneous one, and a retrial of the cause, so far as it affects the personal property, upon a correct theory would be required, but for the fact that the findings and conclusions of the trial court disclose that upon the disposition of the shares of stock in the Butte Sewer Pipe and Tile Company, and the note for $625 and interest, the only items of personal property in controversy, the rights of the parties plaintiff and defendant are substantially equal, and that the claims of one are offset by the claims of the other. The difference amounts to about $2.38, and is insufficient to justify any further court proceedings under the maxim *"De minimis non curat lex."*

The judgment and order are reversed, and the cause is remanded to the district court, with direction to dismiss the complaint.

*Reversed and remanded.*

Mr. Chief Justice Brantly and Mr. Justice Sanner concur.