STEPHENS, APPELLANT, *v.* CONLEY, RESPONDENT.

(No. 3,320.)

(Submitted November 18, 1913.   Decided January 6, 1914.)

[138 Pac. 189.]

*Convicts—Regulations—Liability of Warden—Commutations— False Imprisonment—Assault—Malicious Prosecution—Pleadings — Curing Defects — Answer—New Matter—Reply—Appeal—Notice—Sufficiency.*

Appeal—Notice—Sufficiency.
1.  A notice of appeal which, though informal and indefinite in the extreme, must have apprised defendant that plaintiff's purpose was to appeal from a judgment entered on a given date in favor of the former and against the latter, *held* proof against dismissal on the ground of insufficiency.

Convicts—Assault—Personal Liability of Warden—Officers—Presumptions— Complaint—Insufficiency.
2.  Complaint of an ex-convict in an action against the warden of the state prison to recover damages for an assault committed upon his person as well as for certain personal indignities inflicted upon him, such as being confined in the same cell with an insane prisoner and a negro, *etc.*, *held* not to state a cause of action in the absence of an allegation negativing the presumption that the acts complained of were done by defendant in the performance of his official duties as warden.

Appeal and Error—Correct Result—Wrong Reason—Affirmance.
3.  If a decision of the trial court is correct, though based upon an erroneous reason, it will not be disturbed on appeal.

False Imprisonment—Gist of Action.

4. The gist of the offense of false imprisonment, as defined in section 8324, Revised Codes, is the unlawful detention.

[As to the liability for malicious prosecution, see notes in 26 Am. St. Rep. 127; 93 Am. St. Rep. 454. Advice of counsel as defense to action for malicious prosecution is the subject of a note in Ann. Cas. 1912D, 423.]

Convicts—Good-time Allowance—Failure to Grant—False Imprisonment—Complaint—Insufficiency.

5. To justify an ex-convict in bringing an action for false imprisonment against the warden of the state prison because of the failure of defendant to deduct from the sentence imposed upon him by the judgment of imprisonment the good-time allowance provided for by section 9737, Revised Codes, he must be able to show that the board of prison commissioners had granted him such commutation but that defendant had refused to deduct the credits allowed; otherwise the complaint fails to state a cause of action.

[As to what constitutes false imprisonment, and the liability therefor, see notes in 67 Am. St. Rep. 408; 118 Am. St. Rep. 719.]

Pleading and Practice—Answer—New Matter—Reply.

6. The "new matter" in an answer which, under section 6560, Revised Codes, calls for a reply is such only as calls for a defense or a counterclaim, anything else not being new matter within the meaning of the Practice Act.

Same.

7. If the facts stated in the answer can be proved under a general denial, they do not constitute new matter within the meaning of the Practice Act, and failure to reply does not amount to an admission of the truth of the matters stated.

Same—General Denial—Issues—Evidence.

8. Under a general denial the defendant may introduce any evidence which goes to controvert the facts which the plaintiff is bound to establish to sustain his action.

Malicious Prosecution—Pleading and Proof.

9. In order to make out a *prima facie* case of malicious prosecution, the plaintiff must allege and prove the commencement of a prosecution against him through defendant's instigation, want of probable cause, malice, favorable termination of prosecution, the damage suffered and the amount thereof.

Same—Argumentative Denials—Reply Unnecessary.

10. In an action for malicious prosecution, affirmative allegations of the answer showing probable cause, advice of counsel, absence of malice, and good faith on the part of defendant, held argumentative denials, making a reply to them unnecessary.

Pleading—Insufficiency—Defect Cured by Pleading of Adversary.

11. A defective pleading is cured when a material fact omitted therefrom has been supplied by allegation in the pleading of the adverse party.

Malicious Prosecution—Defective Complaint—Cured by Answer.

12. *Held,* under the rule declared in paragraph 11 above, that plaintiff's failure to allege that a judicial proceeding had been instituted or prosecuted against him was supplied by defendant's statement that he caused a criminal prosecution to be brought against plaintiff, describing the particular steps taken; *held,* further, that his omission to plead a favorable termination of the action was cured by defendant's allegation

that plaintiff was by an order of the district court discharged from custody and from prosecution on the charge preferred.

Appeal and Error—Review—Scope.

13. On appeal from a judgment erroneously dismissing an action on the ground that the complaint did not state a cause of action, the defects in which pleading were cured by the answer, the supreme court is not concluded from ordering a new trial because of appellant's failure to call the trial court's attention to the curative effect of the answer.

*Appeal from District Court, Powell County; W. R. C. Stewart, Judge of the Ninth Judicial District, presiding.*

ACTION by Oram Stephens against Frank Conley. Judgment for defendant and plaintiff appeals. Affirmed in part and reversed in part.

*Mr. Chas. A. Wallace,* for Appellant, submitted a brief; *Mr. L. M. Van Etten,* of Counsel, and *Mr. Wallace* argued the cause orally, and submitted a brief in reply to that of Respondent.

First cause of action: The warden of the state prison is not permitted to ignore his duty under section 9742, Revised Codes, or to abuse his discretion in regard to the exercise of his opinion as to when a prisoner is insane; and if he does so, and keeps and imprisons a violently insane prisoner in a cell with another prisoner, for the sole and only purpose of humiliating, oppressing, vexing and annoying said prisoner, then he is responsible for any injuries caused thereby.

In the second cause of action it is alleged, and the answer admits, that plaintiff was kept, detained and imprisoned in the state prison by defendant, for a period of 177 days after his term had expired; and the question in this case is whether or not this allegation constitutes a cause of action in damages against the defendant and in favor of the plaintiff. We contend, that, as decided in *In re Wadleigh,* 82 Cal. 518, 23 Pac. 190, section 9737, Revised Codes, providing for commutation of sentence upon good behavior, fixes the term of imprisonment upon certain conditions, and that this statute entered into and became a part of the judgment of the court, and when a defendant is sentenced to imprisonment, as in the case of appel-

lant, for a period of four years, it means four years subject to the deductions allowed from such time by law, and appellant's term of imprisonment expired September 12, 1910, the same being three years and two months from the 12th day of July, 1907. In *Platner* v. *Sherwood,* 6 Johns. Ch. (N. Y.) 130, Kent, Ch., said a person attainted is not absolutely at the disposal of the crown. He is so for the end of public justice, and for no other purpose, and that if beaten or maimed while under attainder, or if a woman was ravished while under attainder, and a pardon afterward ensued, the party injured might maintain an action. One convicted of a felony is not thereby disqualified from suing for personal injuries received during his imprisonment. (*Dade Coal Co.* v. *Haslett,* 83 Ga. 549, 10 S. E. 435; see, also, *Fite* v. *State,* 114 Tenn. 646, 4 Ann. Cas. 1108, 1 L. R. A. (n. s.) 520, 88 S. W. 941.)

In *In re Canfield,* 98 Mich. 644, 57 N. W. 807, it was held that the right of a convict to a prescribed reduction from his sentence upon compliance with the rules of the prison, was one of which he could not be deprived, and that a later Act, the effect of which was to deprive a person sentenced under the prior statute of this right in part by reducing the amount of his credits, was to that extent an *ex post facto* law, because its effect was to increase, and not to mitigate, his punishment. It was held, therefore, that the prisoner was entitled to credit upon the basis of the statute under which he was sentenced.

Normally, any and every natural person, irrespective of his public or private character or his personal status, is liable in an action for false imprisonment whenever such person appears to have unlawfully detained another. (19 Cyc. 332.) Section 8324, Revised Codes, defining false imprisonment, makes no distinction in persons committing the offense, and we are unable to distinguish the acts of the warden of the state penitentiary from those of a private individual.

The third cause of action is not against the warden, but against the respondent personally, and is a cause of action for false arrest and malicious prosecution committed by said re-

spondent against this appellant, which is actionable under the law. Our statute, section 8908, Revised Codes, is specific in its language: that prisoners are under the protection of the law, and any injury to their person not authorized by law is punishable in the same manner as if they were not convicted or sentenced. (*Westbrook* v. *State,* 133 Ga. 578, 18 Ann. Cas. 295, 26 L. R. A. (n. s.) 591, 66 S. E. 788.) Treating false imprisonment as a tort, as distinguished from a crime, the only defenses which may be interposed are a denial of the imprisonment and a justification thereof. (*Kroeger* v. *Passmore,* 36 Mont. 504, 14 L. R. A. (n. s.) 988, 93 Pac. 805.)

*Messrs. Rodgers & Rodgers, C. F. Kelley, L. O. Evans,* and *S. P. Wilson,* for Respondent, submitted a brief; *Mr. W. B. Rodgers* argued the cause orally.

Plaintiff's first pretended cause of action does not state any facts sufficient to constitute a cause of action in favor of the plaintiff and against the defendant, and therefore the ruling of the court excluding plaintiff's testimony and dismissing said pretended cause of action was correct. The duties of the defendant as warden are in the highest sense duties owing to the public, and the matter of the infliction of punishments upon convicts confined in the penitentiary for the violation of rules, misconduct, misbehavior, the treatment of convicts in the suppression of mutiny—that which is necessary to be done to prevent escapes and everything appertaining to the good order and discipline of the prison and its inmates—is a matter committed to his discretion, subject to the laws of the state and the rules and regulations of the state board of prison commissioners, and his action thereon is *quasi* judicial and discretionary, and therefore, under no circumstances may a civil action be maintained against such warden upon the complaint of a convict for damages upon such matters as are alleged and set out in plaintiff's first cause of action. The rules and regulations, having been made by the board with authority and by virtue of statutory law, have the force and effect of law, and of these

rules and regulations every court within the state is bound to take judicial notice. They were open to the court for its consideration upon the objections made to the sufficiency of the complaint in this case. (*United States* v. *Williams,* 6 Mont. 379, 12 Pac. 851; *Cosmos Exploration Co.* v. *Gray Eagle Co.,* 190 U. S. 301, 47 L. Ed. 1064, 23 Sup. Ct. Rep. 692, 24 Sup. Ct. Rep. 860; *United States* v. *Southern Ry. Co.,* 187 Fed. 209.; *Whitney* v. *Spratt,* 25 Wash. 62, 87 Am. St. Rep. 738, 64 Pac. 919; *Wabash Ry. Co.* v. *Campbell,* 219 Ill. 312, 3 L. R. A. (n. s.) 1092, 76 N. E. 346; *Larson* v. *First Nat. Bank,* 66 Neb. 595, 92 N. W. 729; *Seaboard Air Line* v. *Shackelford,* 5 Ga. App. 395, 63 S. E. 252.)

Where a public officer is discharging duties for the benefit of the public, and is called upon to act *quasi* judicially, there can be no civil liability, notwithstanding facts are alleged showing malice upon the part of such officer; the motive of the officer cannot be inquired into, and the better rule draws no distinction between the acts of judicial officers and *quasi*-judicial officers. (Mechem on Public Officers, sec. 637.) In the case of *Wilkes* v. *Dinsman,* 48 U. S. 101, 12 L. Ed. 625, is found a conclusive decision showing that such duties as the warden of the penitentiary is called upon to perform are *quasi* judicial in their character. (See, also, *Schoettgen* v. *Wilson,* 48 Mo. 253; *Weaver* v. *Devendorf,* 17 N. Y. Com. Law, 117; *East River Gaslight Co.* v. *Donnelly,* 93 N. Y. 557.) The principle that there can be no recovery against an officer acting in a *quasi*-judicial capacity, even though a malicious motive be alleged and proved, is firmly embedded in the decisions of the courts of California. (*Downer* v. *Lent,* 6 Cal. 94, 65 Am. Dec. 489; *Turpen* v. *Booth,* 56 Cal. 65, 38 Am. Rep. 48; see, also, *Dreucker* v. *Salomon,* 21 Wis. 621, 94 Am. Dec. 571; *Wilson* v. *Spencer,* 91 Neb. 169, 135 N. W. 546.) Should the warden violate the law, other and more effectual methods for the punishment of the warden are amply provided. In the first place, he is removable by his superiors. In the second place, under section 8908, Revised Codes, the state controls the warden and sees to his punishment, and if he has

violated any of the criminal laws or committed unjustifiable assaults upon the convicts, it is the sworn duty of the officers of the state to see that he is prosecuted and punished therefor. Such was the common law and such is the statutory law. (*Williams* v. *Adams,* 3 Allen (Mass.), 171; *Root* v. *Rose,* 6 N. D. 575, 72 N. W. 1022; *Sage* v. *Laurain,* 19 Mich. 137; *Jones* v. *Brown,* 54 Iowa, 74, 37 Am. Rep. 185, 6 N. W. 140; *Wall* v. *Trumbull,* 16 Mich. 228; *Amperse* v. *Winslow,* 75 Mich. 234, 42 N. W. 823; *State* v. *Smith,* 23 Mont. 44, 57 Pac. 449.)

But assuming that a recovery may be had against the warden of the state penitentiary upon allegation and proof of malice for such acts as those alleged and set out in plaintiff's first cause of action, nevertheless we assert that there is no statement of a cause of action against the defendant in this case. The acts alleged against the defendant are clearly within its jurisdiction, as shown by the common law, the rules and regulations of the board and the statutes of the state; in other words, under certain circumstances, he had authority to inflict the same. The presumption of law is, until the contrary appears by proper allegations, that the warden, being a public officer, did the things alleged in pursuance of his duty, and in a lawful manner, and before a cause of action could be stated against the warden, this presumption must be overcome by proper averments. (*Wightman* v. *Brush,* 56 Hun, 647, 10 N. Y. Supp. 76; *Wilkes* v. *Dinsman,* 48 U. S. 101, 12 L. Ed. 625; *Wilson* v. *Spencer,* 91 Neb. 130, 135 N. W. 546; *Going* v. *Dinwiddie,* 86 Cal. 633, 25 Pac. 129; *Schoettgen* v. *Wilson,* 48 Mo. 253.) True, the plaintiff alleges that some of the things charged were done by the warden willfully, maliciously and unlawfully. This allegation is not made with reference to the corporal punishments of which the plaintiff complains or the alleged assault upon him. It is alleged therein that the guards committed this assault unlawfully, willfully and maliciously, but, of course, the state of feeling of the guards in committing the assault cannot be imputed to the warden. The failure to allege substantial facts showing wrong upon the part of the warden or malicious intent can-

not be relieved, nor supplied by words of this character, however numerous or however often repeated. (*Fausler* v. *Parsons,* 6 W. Va. 486, 20 Am. Rep. 437; *Pratt* v. *Gardner,* 2 Cush. (Mass.) 63, 48 Am. Dec. 652; *Triscony* v. *Orr,* 49 Cal. 612; *Miles* v. *Mc-Dermott,* 31 Cal. 270; *Courter* v. *Wood,* 3 N. J. L. 200 (617); *Despreaux* v. *Smock,* 3 N. J. L. 313 (744); *Tavenner* v. *More-head,* 41 W. Va. 116, 23 S. E. 673.)

Plaintiff's second pretended cause of action does not state facts sufficient to constitute a cause of action against the defendant. It does not contain any statement (1) that the plaintiff, during the term of his imprisonment, had performed regular labor during good health, either within or without the state prison inclosures; (2) that the board of state prison commissioners had ever at any time granted to him any credit of time, as provided for in section 9737; (3) that during the term of his imprisonment he had never attempted to escape; and (4) that he had not committed or attempted to commit any assault upon his keeper, guard, officer or other convict, or otherwise endangered life, or that he had not been guilty of any flagrant disregard of any rule of the prison, or any misdemeanor; neither is there any allegation that the board had not forfeited any good time which he might otherwise have been entitled to; and that they had not, before such forfeiture, given him notice of the same. The authorities hereinbefore cited on the pretended first cause of action, and the argument thereon made in regard to the presumptions which attend upon the warden in regard to his liability for *quasi*-judicial acts in regard to the nature of his public duties, and other questions, are directly applicable and pertinent to this cause of action, and we invite the court's attention thereto and ask that the same be given full force and effect. (See, also, *Vanderheyden* v. *Young,* 11 Johns. (N. Y.) 151; *In re Canfield,* 98 Mich. 644, 57 N. W. 807.)

Plaintiff's pretended third cause of action does not state facts sufficient to constitute a cause of action against the defendant. A complaint for malicious prosecution must describe the crime charged against the plaintiff and must set out the nature of

said prosecution. (26 Cyc. 72; 13 Ency. Pl. & Pr. 427, 428; *Whaley* v. *Lawton,* 57 S. C. 256, 35 S. E. 558; *Aiken* v. *Lancaster Cotton Mills,* 85 S. C. 180, 67 S. E. 166; *Segusky* v. *Williams,* 89 S. C. 414, 36 L. R. A. (n. s.) 230, 71 S. E. 971; *Cochran* v. *Bones,* 1 Cal. App. 729, 82 Pac. 970.) Tested by these rules, it is apparent that the third cause of action is fatally defective for want of these allegations.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

The complaint attempts to set forth three causes of action for damages: (1) For assault and other personal indignities; (2) for false imprisonment; and (3) for malicious prosecution. Each charge arose out of transactions which occurred while plaintiff was imprisoned in the penitentiary, and while Conley was warden or contractor in charge of that institution.

After the cause was at issue and upon the trial, defendant objected to the introduction of evidence by the plaintiff, upon the ground that the complaint does not state a cause of action. This motion was sustained, and a judgment was entered dismissing the action and awarding defendant his costs. From that judgment plaintiff prosecuted this appeal. Respondent has moved [1] to dismiss the appeal upon the ground of insufficiency of the notice. The motion is overruled. The notice is informal, indefinite and reaches the very limits of defensible ground. It refers to the order of the court sustaining defendant's motion to exclude evidence. Such an order is not appealable (sec. 7099, Rev. Codes); but from the notice it may be gathered that the plaintiff's purpose was to appeal from the judgment in this action made and entered on June 27, 1912, in favor of the defendant and against the plaintiff.

In support of the motion counsel refer to the decision of this court in *State ex rel. Rosenstein* v. *District Court,* 41 Mont. 100, 21 Ann. Cas. 1307, 108 Pac. 580; but in the later case of *Valadon* v. *Lohman,* 46 Mont. 144, 127 Pac. 88, we had occasion to review the *Rosenstein Case* and to differentiate it from the then

instant case. In referring to the contents of a notice of appeal we said: ''It must be deemed sufficient if upon its face the adverse party is given enough information to enable him to know what is required of him in order to protect his rights. This view not only permits, but requires, a reasonable construction of it in order that the appellant may not be defeated of his right for merely technical reasons. * * * The notice * * * contains the title of the cause, the date of the rendition of the judgment, the statement that it was rendered in favor of the plaintiff and against the defendant, and the title of the particular court that rendered it. The notice was sufficient.''

The defects in the notice in this case are clearly the result of the misapprehension of counsel for appellant, as to what the judgment determined. They apparently confuse the order for judgment with the judgment itself, or proceed upon the theory that the preliminary recitals in the judgment constitute an essential part of it. So long as the notice serves the purpose of apprising the respondent of the judgment which it is sought to have reviewed, it is sufficient. The giving of a notice is not an indispensable step in taking an appeal. It does not serve any higher purpose than a summons, and its entire absence can be waived. (*Jenkins* v. *Carroll,* 42 Mont. 302, 112 Pac. 1064.) This court is commanded by statute to give its judgment without regard to technical errors or defects which do not affect the substantial rights of the parties. We are forbidden to idolize matters of form at the expense of substance, or to pay tithes of mint and anise and cumin while omitting the weightier matters of law.

### ON THE MERITS

*First Cause of Action.* The plaintiff complains that while he [2, 3] was duly imprisoned in the penitentiary, the defendant, as warden in charge of that institution, caused him to be (a) confined in a cell with an insane Italian, and (b) with a negro, (c) to be shackled, manacled and placed in a dungeon and confined on a bread and water diet, and (d) assaulted, beaten and

wounded, his collarbone broken, and his head and chest cut and bruised.

(a) The complaint fails to allege that the Italian's insanity was known to the warden or to the guards or other prison officials, or that plaintiff ever made complaint or requested a change.

(b) While the plaintiff's refined sensibilities may have been shocked by his being compelled to share his cell with a negro, he fails to allege facts sufficient to state a cause of action for legal relief. Furthermore, the answer, while admitting the fact of plaintiff's confinement with the negro, alleges in justification that, on account of the crowded condition of the prison, it was necessary that someone be confined in the same cell with the negro, and this is not denied.

(c) All of plaintiff's allegations are predicated upon the premise that he was a convict, and that Conley was warden. The answer admits the facts that plaintiff was manacled, shackled, placed in a dungeon, and kept on a bread and water diet. It then sets forth in justification that the state prison board, pursuant to statutory authority, duly made and promulgated certain rules and regulations for the management of the penitentiary and the discipline of prisoners; that the punishments enumerated under this specific charge are species of punishments provided for by such rules, and that the infliction of the punishments upon the plaintiff was necessary to compel his submission to prison authority. The history of an incipient riot in the penitentiary is recited at length, and the part played by defendant is set forth. There is no denial of these facts, and, standing admitted, they amount to a complete justification, and defeat any right of recovery upon the part of the plaintiff, if any right he otherwise had.

(d) Standing alone, the assault upon the plaintiff, with the details of his injuries as depicted in this charge, seems cruel—almost barbarous—but plaintiff doubtless discreetly refrained from enlightening the court upon the surrounding circumstances. These, however, are fully supplied by the affirmative portion of the answer to this charge, which amounts, in legal effect, to a

confession and avoidance, or, in other words, to a justification for whatever injuries were actually inflicted upon the plaintiff. The answer alleges that on March 8, 1908, this plaintiff, Geo. Rock, Wm. Hayes, and C. B. Young, all convicts in the penitentiary, entered into a conspiracy to escape from prison, and in pursuance of that purpose, and in the attempted execution of their plan, they murdered John Robinson, the deputy warden, and assaulted this defendant, the warden, with intent to kill and murder him, and did grievously wound him so that for many weeks thereafter he was nigh unto death; that this plaintiff, Stephens, actually participated in the murder of Robinson and the assault upon defendant; that thereafter Thos. McTague, co-contractor with this defendant in the management of the penitentiary, and having equal authority with him to maintain order and discipline in the prison, after a complete investigaton of the mutiny referred to, ordered Stephens confined to a dungeon, that Stephens was contumacious and violent, and assaulted the guards detailed to execute McTague's order, and that in the necessary defense of themselves and in subduing Stephens the guards inflicted whatever injuries plaintiff sustained. There is not any denial of these facts, and, standing alone, they constitute a justification for the acts of which complaint is made, assuming that the complaint states a cause of action in the particular instance now under consideration. For this reason alone the ruling of the trial court should be sustained; for it is now the rule, too well established in this state to be open to further controversy, that if the decision of the lower court was correct, it will not be disturbed even though it may have been prompted by an erroneous reason. (*Marron* v. *Great Northern Ry. Co.*, 46 Mont. 593, 129 Pac. 1055; *Von Tobel* v. *City of Lewistown*, 41 Mont. 226, 137 Am. St. Rep. 733, 108 Pac. 910; *Menard* v. *Montana Central Ry. Co.*, 22 Mont. 340, 56 Pac. 592; *Winnicott* v. *Orman*, 39 Mont. 339, 102 Pac. 570.)

But the trial court's ruling was correct upon the theory of its rendition, and the complaint does not state a cause of action The warden of the penitentiary is a public officer, and in this

instance he is sued as such, and for acts done by him in virtue of his office as warden. (*State ex rel. Stephens* v. *District Court,* 43 Mont. 571, Ann. Cas. 1912C, 343, 118 Pac. 268.) The presumption that official duty was regularly performed attaches to his acts (sec. 7962, subd. 15, Rev. Codes); and, since this pretended right of action arose while plaintiff was rightfully imprisoned, it was incumbent upon him, in order to put the warden in the wrong, to allege that his injuries did not result as the consequence of his wrongful or unlawful acts. In *Wightman* v. *Brush,* 56 Hun, 647, 10 N. Y. Supp. 76, an action similar to the one before us, a demurrer was sustained to the complaint, and properly so according to the supreme court. In justification of that conclusion the court said: "There is no allegation in the complaint that the acts done by the defendants were not in accordance with the regulations of the superintendent, or that they were not necessary for the proper punishment of the plaintiff, or to secure submission and obedience upon his part." For the reason that this complaint does not negative the presumption attaching to the warden's official acts, it does not state a cause of action.

*Second Cause of Action.* "False imprisonment is the unlawful violation of the personal liberty of another." (Sec. 8324, [4] Rev. Codes.) The gist of the offense is the unlawful detention. (*McCarthy* v. *De Armit,* 99 Pa. 63.)

No complaint is made of plaintiff's incarceration in the penitentiary in the first instance. His action proceeds upon the assumption that he was properly sentenced to a four year term [5] of imprisonment, but his contention is that, by virtue of the good-time allowance provided in our statute, he was entitled to his discharge as a matter of right, upon the expiration of three years and two months, in the absence of any showing that such allowance had been forfeited by the prison board. In many of the states this theory would be accepted at once, not because of any peculiar right in the plaintiff as a convict, but solely because of local laws, rules or regulations. Commutations for good conduct are purely matters of legislative control, and the

determination of the extent and character of the right in any given instance is referable entirely to the local statutes. (*Woodward* v. *Murdock,* 124 Ind. 439, 24 N. E. 1047.) An examination of the provisions found in the laws of the different states discloses that they classify themselves generally into two groups. In the first are found those statutes which by their terms automatically reduce the period of imprisonment upon the rendition of the judgment. It is said, indeed, that a provision of this character forms a part of the judgment, and that under it the prisoner enters upon his confinement with the statutory assurance that his term is automatically abridged by law, unless by his own breach of prison discipline he forfeits the credits which inhere to his sentence. Under a statute of this character the presumption is in favor of the convict, and the burden is upon the state to show affirmatively the facts which defeat the claim to statutory allowances. (*Ex parte Wadleigh,* 82 Cal. 518, 23 Pac. 190; *In re Canfield,* 98 Mich. 644, 57 N. W. 807; *In re Kness,* 58 Kan. 705, 50 Pac. 939; *State ex rel. Davis* v. *Hunter,* 124 Iowa, 569, 104 Am. St. Rep. 361, 100 N. W. 510.) In the second group are those statutes which determine in advance the amount of credits—computed in days and months—which certain prisoners may earn upon certain specified terms and conditions. The commutation is held out as a reward for good conduct or efficiency in prison labor. A statute of this character cannot enter into the sentence or form a part of it, for the reward must first be earned before the prisoner is entitled to it. Our statutory provisions are very brief, and their terms somewhat indefinite, but the theory upon which they proceed is, we think, made sufficiently manifest. The government, supervision, and control of the penitentiary are lodged in the state board of prison commissioners. (Sec. 9716, Rev. Codes.) Among the powers and duties of the board, section 9737, Revised Codes, provides the following: "The board is hereby authorized and required to grant to any convict confined in the state prison, who shall well behave himself and who shall perform regular labor during good health, either within or without the state

prison inclosures, a credit of the time from his sentence as appears in the following table." The table mentioned designates in months the credits which may be earned. Upon a four year term they aggregate ten months. But it is to be observed, in the first instance, that by the language of the statute any allowance for good conduct or efficient labor has its source in a grant from the prison board, and does not spring from the operation of the law itself. The section quoted implies that some investigation must be made by the board, and a judgment formed thereon. There must be a finding that the convict has well behaved himself, and that he has performed regular labor during good health. These are conditions precedent to his right to any credits. Section 9738 seems to indicate a course of procedure for the board. In order to carry out the purpose of these statutes, the board must investigate the record of every convict, probably at the end of every year of his service, and grant the proper credits if earned, for the section declares that, if after a credit has once been earned, the convict commits any of the offenses enumerated, the board shall, upon proof of the fact, after notice to the convict, forfeit all deductions of time earned before the commission of such offense. New York, Pennsylvania, and doubtless other states have statutes somewhat similar to ours, and under any of these the burden is upon the prisoner to show that he has earned the credits by complying with the prison rules. (33 Cyc. 333; *In re Raymond* (D. C.), 110 Fed. 155.) And even upon such showing he has but made a *prima facie* case against the board, and not any case of dereliction of duty upon the part of the warden. Doubtless, if the board arbitrarily refused to grant him credits fairly earned, the prisoner would have an adequate remedy; but it is only after the board has acted that the warden can be held derelict, and then only upon his refusal to deduct the credits which have been granted by the board. In the absence of any showing that the plaintiff had earned the commutation which he might have earned under the law, and a further showing that the board had granted to him the credits he claims, the plaintiff fails to state a cause of action for false imprisonment.

When the judgment of imprisonment is entered, and the sheriff in execution of it delivers the convict to the penitentiary, he must also deliver to the warden a certified copy of the judgment (sec. 9380, Rev. Codes), and this is the evidence of the warden's authority for detaining the prisoner. If upon its face the judgment directs that he be confined in the penitentiary at hard labor for four years, the warden cannot release him sooner, except upon an order of the prison board or the judgment of a court of competent jurisdiction.

*Third Cause of Action.* In the answer to the third cause of action, defendant specifically sets forth that on March 6, 1911, he signed and verified a complaint in the justice of the peace court of Cottonwood township, Powell county, before M. E. Fee, justice of the peace, charging the said Oram Stephens with the crime of attempt to escape from the state penitentiary; that a preliminary examination was had; that Stephens was bound over to the district court; that the county attorney of Powell county filed an information against him for the same offense; and that on May 15, 1911, he was, by order of the district court discharged from custody and from prosecution upon said charge. The defendant, by way of special defense, so called, further alleges his belief in the truth of the charge which he made against Stephens, the fact that, before making it, he consulted and sought the advice of the county attorney, and after a full, frank and truthful statement of all the facts, he was advised by the county attorney that there was probable cause and sufficient ground for believing Stephens guilty, and that in making such charge he acted upon that advice. Not any of these facts are denied by a reply, and respondent insists that they are therefore to be deemed admitted, and, if admitted, they constitute a complete defense to the plaintiff's third cause of action, if any he has.

Was it necessary for plaintiff to reply to these affirmative allegations? That such an inquiry arises and is difficult of solution is of itself a reproach to the law. It is a most serious reflection upon our legislation that the ablest attorneys in this state—men of great learning and wide experience—cannot under-

stand the complex rules of procedure provided in our Civil Practice Act. But so long as legislative assemblies fix, by hard and fast statutes, mere rules of practice, this condition will continue. Under the Code of 1895 a reply was necessary only when the answer contained a counterclaim (Code Civ. Proc., sec. 720), and, as a counterclaim was defined, the statute was comparatively simple and quite generally understood, and doubtless for these [6] reasons was changed. By an Act approved February 22, 1899, the section above was amended so as to require a reply whenever the answer contains either a counterclaim or any *new matter* (Laws 1899, p. 142). With a further slight but immaterial amendment, that provision was carried into the Revised Codes, and is now found in section 6560. What is meant by the words "any new matter"? The legislature doubtless intended that they should be understood in the same sense as the like terms are employed in section 6540, which provides that an answer, aside from admissions and denials, may contain a statement of *any new matter* constituting a defense or counterclaim. If this be true, then the new matter, in an answer which calls for a reply, is only such new matter as constitutes either a defense or a counterclaim, and anything else is not new matter within the meaning of the Practice Act. Eliminating from further consideration any reference to a counterclaim—for there is not any contention that defendant's pleading falls within the definition of that term—and we are confronted with the inquiry: Does the answer contain a statement of new matter constituting a defense, within the meaning of the Code section above? If it does, a reply was required and, in the absence of one, the facts are admitted. If it does not, a reply was not necessary.

Any definition of the phrase "new matter constituting a defense" which may be adopted will require further definition or elucidation in order to be understood. In *Mauldin* v. *Ball*, 5 Mont. 96, 1 Pac. 409, this court, after reviewing the authorities at length, said: "The defense of new matter, necessarily, either expressly or by implication, admits the averments of the complaint, and alleges facts that destroy their effect or defeat them.

If what is alleged amounts to a denial, it is not new matter; nor is it new matter if the facts alleged might have been proven under a denial. If that which is alleged amounts to a denial, or might be proved under a denial, no replication is required, but the defense of new matter must be denied, or it is admitted. It is therefore of vital importance to determine clearly what amounts to a denial, and what to new matter. And the rule for ascertaining this may be stated thus: Whatever facts are alleged in the answer, that might have been proved under a specific denial of the allegations of the complaint, may be considered as and are equivalent to a specific denial of such allegations, and require no replication; for such an answer forms an issue, and whatever averments of the answer amount to an admission of the allegations of the complaint, and tend to establish some circumstance or fact not inconsistent with all such allegations, constituting a defense or counterclaim, and which could not be proved under a specific denial, are new matter and require a replication." The rule appears to be, then, that if the [7] facts stated in the answer could have been proved under a denial of the allegations in the complaint, they do not constitute new matter within the meaning of the Practice Act, and the failure to reply does not amount to an admission of the truth of the matters stated as against the plaintiff.

"Under a general denial of the allegations in the complaint [8] the defendant may introduce any evidence which goes to controvert the facts which the plaintiff is bound to establish to sustain his action." (1 Ency. Pl. & Pr. 817.) In order to make out a *prima facie* case of malicious prosecution, the plaintiff was required to allege and prove: (a) That a judicial pro- [9] ceeding was commenced and prosecuted against him; (b) that the defendant was responsible for instigating, prosecuting or continuing such proceeding; (c) that there was a want of probable cause for defendant's act or acts; (d) that he was actuated by malice; (e) that the proceeding terminated favorably to plaintiff; and (f) that plaintiff suffered damage, with the amount thereof. (13 Ency. Pl. & Pr. 427; Newell on Malicious

48 Mont.—24

Prosecution, 397; *Wheeler* v. *Nesbitt,* 24 How. (U. S.) 544, 16
L. Ed. 765.)   With the burden thus imposed upon the plaintiff
[10] to allege and prove every one of these facts, it is apparent
at once that there is not anything set forth in defendant's an-
swer which could not have been proved under a general denial.
The only purpose which the allegations of this answer can serve
is to show probable cause, absence of malice, and the presence
of good faith.   These are but reasons why the defendant should
not be held liable and such pleading has been aptly termed an
argumentative denial.   (*Rand* v. *Butte Electric Ry. Co.,* 40
Mont. 398, 107 Pac. 87.)

"If the defendant acted under the advice or opinion of legal
counsel, this fact is relevant both to show probable cause and
absence of malice."   (Newell on Malicious Prosecution, 470.)
Under a general denial the defendant "may prove probable
cause, good faith, and absence of malice, advice of counsel, that
the prosecution has not terminated, or that it was not instigated
by the defendant."   (13 Ency. Pl. & Pr. 458; 1 Ency. Pl. &
Pr. 823.)   In considering the question now before us, this court
in *Smith* v. *Davis,* 3 Mont. 109, in treating of new matter sim-
ilar to that found in this answer which had there been stricken
from the answer on motion, said: "It was necessary for the plain-
tiff, in order to maintain the action, to allege in his complaint,
and to establish by the evidence upon the trial, malice and the
want of reasonable or probable cause.   This is the gist of the
action.   It gives life to the complaint.   And the defendant might
have controverted every allegation that it became necessary for
the plaintiff to prove in order to make out his case, under the
general denial.   It follows, therefore, that it was not necessary
for the defendant to plead the absence of malice, or that he had
reasonable or probable cause for his act in causing the arrest of
the plaintiff, in order to establish his defense.   The general
denial was a sufficient answer, and under it all the matter con-
tained in the second defense might have been and was introduced
in evidence upon the trial."

Our conclusion is that the affirmative allegations in the answer do not constitute new matter within the meaning of section 6560 above, and that a reply to them was not necessary.

But respondent insists, further, that this complaint does not [11, 12] state a cause of action for malicious prosecution. It fails to allege that any judicial proceeding whatever was instituted or prosecuted against the plaintiff, and, naturally enough, fails to allege that the proceeding terminated favorably to plaintiff before the commencement of the present action. Counsel for appellant reply, however, that these necessary allegations omitted from the complaint were supplied by the defendant's answer. That one pleading may provide a necessary allegation omitted from an adversary pleading is the rule at common law (1 Chitty on Pleading, p. 703), and is now recognized generally as in effect in all states proceeding under the code system (1 Sutherland's Code Pleading, Practice and Forms, sec. 361; Bliss on Code Pleading, 3d ed., sec. 437; 31 Cyc. 714; Pomeroy's Code Remedies, sec. 579). In an early case this court declared that "a defective complaint may be cured when the material fact omitted therefrom has been supplied by the answer." (*Hershfield & Bro.* v. *Aiken,* 3 Mont. 442.)   The same rule has been repeatedly or specifically recognized in each of the following cases: *Murphy* v. *Phelps,* 12 Mont. 531, 31 Pac. 64; *Hamilton* v. *Great Falls St. Ry. Co.,* 17 Mont. 334, 42 Pac. 860, 43 Pac. 713; *Lynch* v. *Bechtel,* 19 Mont. 548, 48 Pac. 1112; *Crowder* v. *McDonnell,* 21 Mont. 367, 54 Pac. 43; *Hefferlin* v. *Karlman,* 29 Mont. 139, 74 Pac. 201; *Grogan* v. *Valley Trading Co.,* 30 Mont. 229, 76 Pac. 211; *Christiansen* v. *Aldrich,* 30 Mont. 446, 76 Pac. 1007; *Harmon* v. *Fox,* 31 Mont. 324, 78 Pac. 517; and *Mantle* v. *White,* 47 Mont. 234, 132 Pac. 22.   The rule was applied in *Wall* v. *Toomey,* 52 Conn. 35, in an action for malicious prosecution. The plaintiff there failed to allege that the proceeding of which he complained had terminated, and this would have been held fatal but for the fact that the omission was supplied by an allegation in the answer.

It will be observed from the statement of the contents of the answer above that defendant distinctly alleges that he caused a criminal prosecution to be instituted against Stephens. He describes the offense, gives the date, the name of the court, and the particular steps taken. This is a sufficient statement that a judicial proceeding was commenced. (13 Ency. Pl. & Pr. 428; *Runk* v. *San Diego Flume Co.,* 5 Cal. (Unrep.) 251, 43 Pac. 518.) He further alleges that on May 15, 1911, Stephens was, by an order of the district court, discharged from custody and from prosecution on said charge. And this sufficiently discloses that the proceeding had terminated favorably to Stephens. (*McIntosh* v. *Wales* (Wyo.), 134 Pac. 274; Newell on Malicious Prosecution, p. 332 *et seq.; Carpenter* v. *Nutter,* 127 Cal. 61, 59 Pac. 301; 13 Ency. Pl. & Pr. 444.) The essential allegations omitted from the complaint are thus furnished by the answer. But our determination that these affirmative allegations do not constitute new matter—that they might have been omitted altogether without impairing the efficiency of the answer—is not equivalent to holding that the allegations are immaterial. The facts stated are very material, but their statement was not essential to the defense. However, so long as the defendant volunteered them, he is bound by his statement. The reason of the rule which permits one pleading to be aided by another was concisely stated in an early Massachusetts case, as follows: "When the defendant chooses to understand the plaintiff's count to contain all the facts essential to his liability, and in his plea sets out and answers those which have been omitted in the count, so that the parties go to trial upon a full knowledge of the charge, and the record contains enough to show the court that all the material facts were in issue, the defendant shall not tread back and trip up the heels of the plaintiff on a defect which he would seem thus purposely to have omitted to notice in the outset of the controversy." (*Slack* v. *Lyon,* 9 Pick. (Mass.) 62.)

It does not seem consonant with reason, with our present theories of justice, or of the part which courts are to play in its administration, to say that though defendant asserts these facts

to be true, he should not be bound by them, merely because, if he had chosen to do so, he could have omitted any reference to them. Though these allegations do not constitute new matter within the meaning of those words as used in our Civil Practice Act, they are binding upon the defendant as admissions, and supply the necessary facts omitted from the complaint. This is in effect the holding of the supreme court of Connecticut in *Wall* v. *Toomey* above, and the court of appeals of Kansas in a case whose facts are somewhat similar to those before us. (*Arkansas City Bank* v. *McDowell,* 7 Kan. App. 568, 52 Pac. 56.)

It is fairly inferable from the record that, in passing upon [13] the motion to exclude evidence, the attention of the trial court was not directed to the allegations of the answer which cure the defects in the complaint, and that no opportunity was afforded for a decision upon the precise question now before us; but our duty extends to a review of the judgment, and if it is erroneous, we cannot say that it is rendered errorless by the failure of counsel to press upon the trial court the same view now urged upon us.

Since issues are presented by the pleadings, the action for malicious prosecution should have been tried upon the merits.

The judgment upon the first and second causes of action is affirmed. The judgment as to the third cause of action only is reversed, and that cause of action is remanded for further proceedings not inconsistent with the views herein expressed. Each party will pay his own costs of this appeal.

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SANNER concur.